No. 03-625

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 91

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JACOB H. ZAKOVI,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Fifth Judicial District,
                     In and For the County of Jefferson, Cause No. DC 2002-1810,
                     Honorable Loren E. Tucker, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Wendy Holton, Attorney at Law, Helena, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; John Paulson,
                Assistant Attorney General, Helena, Montana

                Mathew Johnson, County Attorney; Leonard J. Haxby, Deputy
                County Attorney, Boulder, Montana


                            Submitted on Briefs:  March 16, 2004

                                   Decided:  April 12, 2005


Filed:

_____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

Jacob H. Zakovi (Zakovi) appeals from the judgment entered in the Fifth Judicial District Court, Jefferson County, finding him guilty of driving under the influence of alcohol, a misdemeanor, in violation of § 61-8-401, MCA (2001), and operating a motorcycle without an endorsement, a misdemeanor, in violation of § 61-5-111, MCA (2001), challenging the District Court's denial of his pretrial motions. We affirm.

We restate the issues on appeal as follows:

1. Did the District Court err when it denied Zakovi's motion to suppress evidence obtained without the investigative advisory required by § 46-5-402(4), MCA (2001)?

2. Did the District Court abuse its discretion when it denied Zakovi's motion in limine which challenged the officer's administration of an HGN test?

3. Did the District Court err when it denied Zakovi's motion to suppress the results of his blood alcohol test for failure to give his consent?

4. Did the District Court err when it denied Zakovi's motion to suppress the results of his blood alcohol test on the grounds that the sample was collected in violation of § 61-8-405(1), MCA?

### FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2001, at approximately 11:00 p.m., Montana Highway Patrolman Joe Cohenour (Officer Cohenour) responded to a motorcycle accident in the McClellan Creek area of Jefferson County. Dispatch advised Officer Cohenour that the victim, later identified as Zakovi, was injured and that an ambulance and Quick Response Unit were en route to the scene. Upon Officer Cohenour's arrival, he observed two emergency medical technicians loading Zakovi into the ambulance. Officer Cohenour requested Zakovi's name and address, and noted that Zakovi's breath

2

smelled of alcohol and his speech was slurred. Zakovi was then transported to St. Peter's Community Hospital (St. Peter's) in Helena. Officer Cohenour conducted an investigation at the scene and determined to further question Zakovi at the hospital. There he initially spoke with the EMTs who had transported Zakovi by ambulance, and they indicated that Zakovi's breath smelled like alcohol. Officer Cohenour then approached Zakovi, who had been placed in a hospital trauma room, and asked him about the accident. Zakovi responded that he was going too fast and "went off the corner and wrecked." As Zakovi spoke, Officer Cohenour noted a more prominent odor of alcohol on his breath, and observed his eyes were bloodshot and watery. This prompted Officer Cohenour to ask whether Zakovi had been drinking before the accident. Zakovi replied that he drank "three or four beers [before the accident], but it feels like a lot more now." Officer Cohenour administered a Horizontal Gaze Nystagmus (HGN) test, and Zakovi showed nystagmus in six areas. Officer Cohenour advised Zakovi of the Montana Department of Justice Noncommercial Implied Consent Advisory, which informed him that he was under arrest for driving under the influence. Officer Cohenour then requested Zakovi's consent to draw a blood sample for the purposes of a blood alcohol content (BAC) test. Zakovi responded that he was drunk and there was no reason to obtain further proof of his intoxication. Officer Cohenour asked two more times for a sample, to which Zakovi replied similarly. After Officer Cohenour explained that a sample was nonetheless necessary, Zakovi agreed to provide one. Analysis of the sample established that Zakovi's BAC was 0.16. Amy Binfet (Binfet), the phlebotomist on duty at St. Peter's, heard Zakovi state that he was drunk at the time of the accident. At neither the accident scene nor at the hospital did Officer Cohenour give Zakovi the investigative stop advisory pursuant to § 46-5-402(4), MCA (2001).

8      On July 13, 2001, Zakovi was charged in the Jefferson County Justice Court with driving under the influence of alcohol, and driving under the influence of alcohol per se, in violation of §§

3

61-8-401 and 61-8-406, MCA (2001), and operating a motorcycle without an endorsement, in violation of § 65-5-111, MCA (2001). On July 26, 2002, Zakovi filed pretrial motions to suppress the State's evidence of his intoxication, which the Justice Court denied. Zakovi was then found guilty in the Justice Court of violating §§ 61-8-401 and 61-5-111, MCA (2001), and he appealed to the District Court. Following a suppression hearing, the District Court denied Zakovi's pretrial motions. Zakovi then entered a conditional plea of guilty to the charges, reserving his right to appeal from the District Court's suppression rulings, which he now challenges.

## STANDARD OF REVIEW

9     Our review for rulings on motions to suppress is twofold. First, we review the court's findings of fact to determine whether they are clearly erroneous–that is, whether the findings are supported by substantial evidence, whether the district court misapprehended the effect of the evidence, and whether the Court is nevertheless left with a definite and firm conviction that the district court made a mistake. *State v. Gouras*, 2004 MT 329, ¶ 12, 324 Mont. 130, ¶ 12, 102 P.3d 27, ¶ 12. Second, we engage in a plenary review of the conclusions of law to determine whether the district court's interpretation of the law is correct. *Gouras*, ¶ 12.

10    We review a district court's denial of a motion in limine for an abuse of discretion. *Henricksen v. State*, 2004 MT 20, ¶ 46, 319 Mont. 307, ¶ 46, 84 P.3d 38, ¶ 46; *Bramble v. State*, 1999 MT 132, ¶ 16, 294 Mont. 501, ¶ 16, 982 P.2d 464, ¶ 16. The authority to grant or deny a motion in limine "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties." *Hulse v. State, Dept. of Justice, Motor Vehicle Div.*, 1998 MT 108, ¶ 15, 289 Mont. 1, ¶ 15, 961 P.2d 75, ¶ 15. Thus, the district court has broad discretion to determine the admissibility of evidence, *see Pula v. State*, 2002 MT 9, ¶15, 308 Mont. 122, ¶ 15, 40 P.3d 364, ¶ 15, and we will not overturn the district court's

4

ruling unless the party alleging error proves an abuse of discretion and resulting error. *Henricksen*, ¶ 46.

## *DISCUSSION*

**Did the District Court err when it denied Zakovi's motion to suppress evidence obtained without the investigative advisory required by § 46-5-402(4), MCA (2001)?**

Zakovi argues that Officer Cohenour's questioning and the administration of field sobriety tests at the accident scene and hospital resulted in a seizure of his person, provided particularized suspicion to Officer Cohenour that Zakovi had committed a crime, and therefore constituted an investigative stop. He argues therefrom that Officer Cohenour was obliged to provide him the investigative stop advisory set forth in § 46-5-402(4), MCA (2001), and Officer Cohenour's failure to do so required that the evidence obtained from the investigation, that being the officer's notation of alcohol on Zakovi's breath, his observation of Zakovi's bloodshot and watery eyes, and the resulting field sobriety test results, must be suppressed pursuant to our holding in *State v. Krause*, 2002 MT 63, 309 Mont. 174, 44 P.3d 493.

Section 46-5-402(4), MCA (2001),[1] provides:

> **Stop and frisk.** A peace officer who has lawfully stopped a person *under 46-5-401* or this section:
> . . .
> (4) shall inform the person, as promptly as possible under the circumstances and in any case before questioning the person, that the officer is a peace officer, that the stop is not an arrest but rather a temporary detention for an investigation, and that upon completion of the investigation, the person will be released if not arrested. [Emphasis added.]

Section 46-5-401(1), MCA (2001), provides:

---

[1]Section 45-5-402, MCA (2001), was repealed by Session Law 2003, Ch. 343, Sec. 2, but was in effect at the time.

5

> **Investigative stop and frisk.** In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

We first note that Zakovi's argument is premised on the incorrect assumption that police are required to give the investigative stop advisory whenever they have particularized suspicion that a crime has been committed or initiate a seizure. To the contrary, § 45-5-402(4), MCA (2001), requires an officer to provide the investigative stop advisory only when making an investigative stop upon observing the circumstances that create a particularized suspicion. That did not occur here.

Officer Cohenour's initial contact with Zakovi was made after the officer was called to the scene of a reported accident. He did not stop Zakovi after observing him in "circumstances that create a particularized suspicion" that Zakovi had committed, or was committing, a crime. Section 46-5-401(1), MCA (2001). Indeed, Zakovi was already stopped. Upon Officer Cohenour's arrival at the scene, Zakovi was under the control of emergency personnel and was being loaded into an ambulance for transport to St. Peter's. After Zakovi was taken from the scene, Officer Cohenour completed his investigation of the scene and proceeded to St. Peter's to continue his inquiry of Zakovi. Again, at the hospital, Zakovi was under the care and control of hospital personnel who had placed him in a trauma room to be treated for his injuries. Officer Cohenour testified that his practice is to ask a doctor or nurse for permission before entering a hospital room to question an accident victim, as he considers himself a guest of the hospital, regardless of his duties as an investigating officer. Thus, again, Officer Cohenour initiated no "stop" of Zakovi at the hospital for purposes of the investigative stop advisory statute.

We therefore conclude that Officer Cohenour's questioning and administration of field sobriety tests at the accident scene and at the hospital did not constitute an investigative stop that

6

triggered the investigative stop advisory under § 46-5-402(4), MCA (2001), and the District Court properly denied this motion.

**Did the District Court abuse its discretion when it denied Zakovi's motion in limine which challenged the officer's administration of an HGN test?**

Zakovi argues that the District Court abused its discretion when it denied his motion in limine and admitted the HGN results from Officer Cohenour's testing. He notes that Officer Cohenour deviated from the standard four second interval requirements established by the National Highway Traffic Safety Administration in its <u>DWI Detection and Standardized Field Sobriety Training Manual</u> (DWI Manual),[2] which compromised the test result's validity. He notes that the DWI Manual provides that an HGN test is only valid when "administered in the prescribed, standardized manner; . . . [and] if any one of the standardized field sobriety test elements is changed, the validity is compromised." DWI Manual, p. 12 (emphasis omitted). Therefore, Zakovi claims the test results were unreliable and required exclusion.

---

[2]The National Highway Traffic Safety Administration's <u>DWI Detection and Standardized Field Sobriety Training Manual</u>, Session 8, is compiled from information contained within <u>Psychophysical Tests for DWI</u>, Marcelline Burns and Herbert Moskowitz, June, 1977, NHTSA Report Number DOT HS-802 424; <u>Development and Field Test of Psychophysical Tests for DWI Arrest</u>, Burns V. Tharp and Herbert Moskowitz, March, 1981, NHTSA Report Number DOT HS-805 864; <u>Field Evaluation of a Behavioral Test Battery for DWI</u>, T. Anderson, R. Schweitz, and M. Snyder, September, 1983, NHTSA Report Number DOT HS-806 475.

7

The DWI Manual provides that an officer who suspects that an individual is driving under the influence of alcohol may administer an HGN test for the purpose of checking an individual's eyes for distinct nystagmus at maximum deviation (Maximum Deviation test), and for the onset of nystagmus prior to forty-five degrees (Forty-five Degree test), which the DWI manual finds probative of an individual's level of impairment.[3] The record indicates that the District Court considered the DWI Manual's provisions, and examined a video demonstrating Officer Cohenour's deviation from the four second interval requirements in his usual administration of these two tests.

The District Court also considered evidence of Officer Cohenour's extensive experience. Officer Cohenour is an eleven-year police veteran who has handled more than 450 DUI cases in his career, and teaches field sobriety testing at the State Law Enforcement Academy. In light of Officer Cohenour's experience and training, the court found his testimony credible and concluded that his statement that valid HGN test results are obtainable despite deviation from the DWI manual's four second interval requirements, particularly because nystagmus is more apparent in the more inebriated suspect, was correct. In this regard, the District Court also noted Officer Cohenour's

---

[3]We note that the DWI Manual states that an officer is to move the stimulus from the suspect's nose to the suspect's shoulder, holding the eye at that position for *approximately* four seconds. While administering the Forty-five Degree test, the officer is to move the stimulus toward the suspect's eye at a speed that would take *about* four seconds for the stimulus to reach the edge of the suspect's shoulder. DWI Manual, p. 16.

observation that Zakovi appeared more inebriated when questioned at St. Peter's then he had at the scene of the accident.

In light of the evidence presented herein of the validity of the HGN test results, which the District Court found credible, we conclude that the District Court did not abuse its discretion when it denied Zakovi's motion in limine and admitted the results.

**Did the District Court err when it denied Zakovi's motion to suppress the results of his blood alcohol test for failure to give his consent?**

Zakovi contends that the State failed to establish that he consented to Officer Cohenour's request to withdraw a blood sample for the purposes of a BAC test in accordance with § 61-8-402, MCA (2001). Alternatively, Zakovi argues that, if he did consent to his blood being drawn, his consent did not extend to a BAC analysis on the sample. We address each argument in turn.

Zakovi's first argument cites § 61-8-402(1) and (4), MCA (2001), which provides:

> (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.
> . . . .
> (4) If an arrested person refuses to submit to one or more tests requested and designated by the officer as provided in subsection (2), the refused test or tests may not be given . . . .

Although Zakovi acknowledges that his consent to have a blood sample withdrawn is implied pursuant to § 61-8-402(1), MCA (2001), he nonetheless argues that Officer Cohenour's request for a sample violated § 61-8-402(4), MCA (2001), which allows an arrested person to refuse to submit to a test. Zakovi argues that he refused consent by questioning whether the test was necessary and admitting to drinking before the accident. He asserts that Officer Cohenour's three requests for a sample are determinative of his failure to consent.

9

We note, initially, that the parties disagree about who has the burden of proving that Zakovi's consent was voluntarily given under these statutes. Zakovi claims that the State had the burden of establishing the voluntariness of his consent, pursuant to our holdings in *State v. Kirkaldie* (1978), 179 Mont. 283, 587 P.2d 1298, and *State v. LaFlamme* (1976), 170 Mont. 202, 551 P.2d 1011. The State argues this is Zakovi's burden pursuant to the implied consent provisions of § 61-8-402(1), MCA (2001), and our holding in *State v. Turbiville*, 2003 MT 340, 318 Mont. 451, 81 P.3d 475.

However, neither party cites authority directly on point. Neither *Kirkaldie* nor *LaFlamme* dealt with DUI situations involving the implied consent statute. *Turbiville* was a DUI case which recognized the option to refuse a blood test is a matter of grace bestowed by the Legislature, but did not address the burden of proof issue. We note that "[i]t is not this Court's job to conduct legal research on the [parties'] behalf . . . [nor] to develop legal analysis that may lend support to that position." *Johansen v. State Dept. of Natural Res. and Conservation*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24. Further, because disposition of this issue does not turn on resolving the burden of proof question, we deem it appropriate to resolve the issue another day when we may have more complete briefing on this question. For purposes of this appeal, we will assume that the State had the burden of proving that Zakovi consented to providing the blood sample.

To determine whether a defendant voluntarily gave consent, we examine the totality of the circumstances and whether there exists substantial evidence in the record to support the court's conclusion that the defendant's consent was voluntary. *See State v. Nelson* (1997), 283 Mont. 231, 237, 941 P.2d 441, 445.

Upon examination of the record, we conclude the State offered substantial evidence establishing Zakovi's voluntary consent. First, Officer Cohenour testified that he advised Zakovi of the right to refuse consent, pursuant to § 61-8-402(4), MCA (2001), before requesting Zakovi to sign

the Consent to Blood Alcohol Examination Form (Consent Form). Second, Zakovi's signature on the Consent Form noted his voluntariness to submit a blood sample. It states, "I, the undersigned, hereby consent to the drawing of a blood sample of the undersigned by St. Peter's Community Hospital employees . . . ." Third, the State offered the testimony of Binfet that her compliance with Officer Cohenour's request was contingent on Zakovi's understanding of the Consent Form; that, before Zakovi acknowledged consent, she informed Zakovi that his signature on the Consent Form authorized the hospital to withdraw a blood sample and deliver it to Officer Cohenour; that she read the form to him, he understood and signed the Consent Form.

31 Furthermore, Zakovi's repeated questioning about the necessity of the sample is not dispositive of the issue. His statements were not refusals of the test; he simply questioned whether Officer Cohenour needed a blood sample in light of his admission that he had been drinking prior to the accident. Following Officer Cohenour's explanation that a test was still necessary, Zakovi proceeded to give his consent. We conclude that substantial evidence supports the District Court's conclusion that Zakovi voluntarily gave consent to submit a blood sample.

32 Turning to Zakovi's second argument, the record contradicts his contention that his consent to drawing a sample did not extend to ordering a BAC analysis. The Consent Form "authorize[d] the hospital and its employees to deliver the blood sample to any peace officer requesting the same . . . ," and moreover, noted that Officer Cohenour's signature was a request that a blood sample be drawn for the purpose of a BAC analysis. Binfet's testimony that she advised Zakovi of this authorization and determined he understood before withdrawing a blood sample is further evidence in support of the District Court's conclusion. We conclude that the District Court committed no error by denying Zakovi's suppression motion on these grounds.

11

**33     Did the District Court err when it denied Zakovi's motion to suppress the results of his blood alcohol test on the grounds that the sample was collected in violation of § 61-8-405(1), MCA?**

34     Zakovi argues that Binfet withdrew the blood sample at the direction of Officer Cohenour, and not pursuant to the supervision or direction of a physician or registered nurse in accordance with § 61-8-405(1), MCA. Zakovi argues therefore that the test results should have been suppressed. We disagree.

35     For the results of a defendant's blood test to be admissible as evidence under § 61-8-404(1)(b)(ii), MCA (2001), the blood sample shall be withdrawn by a person competent to do so under § 61-8-405(1), MCA, which provides:

> Only a physician or registered nurse, or other qualified person *acting under the supervision and direction* of a physician or registered nurse, may . . . withdraw blood for the purpose of determining any measured amount or detected presence of alcohol . . . . " [Emphasis added.]

36     Binfet testified that, although she was advised by a secretary of the need for her assistance in withdrawing a sample of Zakovi's blood, she was nonetheless continuously under the supervision of a registered nurse on duty in the emergency room, as her position is subordinate and requires compliance with the registered nurse's orders under hospital policy. Thus, substantial evidence supported the District Court's conclusion that Binfet withdrew the sample in accordance with § 61-8-405(1), MCA, and therefore we conclude there was no error in denying Zakovi's motion to suppress the evidence on that basis.

37     Affirmed.

/S/ JIM RICE


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON

12

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER