JUSTICE LEAPHART
delivered the Opinion of the Court.
¶ 1 Kenneth Eugene Merry (Merry) appeals from his conviction in the Seventh Judicial District, McCone County, of driving under the influence of alcohol (DUI). We affirm.
¶2 We restate the issues as follows:
¶3 Did the District Court err when it denied Merry’s motion to suppress the results of his blood alcohol test on the grounds that the sample was collected in violation of § 61-8-405(1), MCA?
¶4 Does the Health Center’s policy unlawfully allow LPNs to conduct blood draws without the supervision and direction of a physician or registered nurse?
¶5 Do violations of the Health Center’s policy demonstrate that Bailey was not an “other qualified person acting under the supervision and direction of a physician or registered nurse” as required by § 61-8-405(1), MCA?
¶6 Did the District Court err when it used Merry’s failure to controvert his implied consent to support its ruling?
BACKGROUND
¶7 On March 26, 2006, at approximately 2:30 a.m., McCone County Sheriff’s Deputy Marc Speer observed Merry commit several traffic infractions, including driving on the wrong side of the street, failing to stop at three different stop signs, and stopping in the middle of the street although he had the right of way. Deputy Speer stopped Merry and began a DUI investigation. Deputy Speer decided not to conduct standard field sobriety tests due to Merry’s difficulties with walking and maintaining his balance. Merry provided Deputy Speer a breath sample, which indicated that Merry had an alcohol concentration of .136. Merry also agreed to provide a blood sample. Deputy Speer transported Merry to the McCone County Health Center (the Health Center), where Tina Bailey, the licensed practical nurse (LPN) on duty, conducted Merry’s blood draw at Deputy Speer’s request. A registered nurse (RN) and a physician’s assistant were on call, but were not physically present in the Health Center.
¶8 The State charged Merry with DUI after receiving the results of Merry’s blood alcohol test, which indicated that Merry had an alcohol concentration of. 14. Merry filed a motion to suppress the results of the test, arguing that Bailey was not statutorily authorized to draw blood to detect the presence of alcohol. The Justice Court denied Merry’s motion. Merry then pleaded guilty to DUI, but specifically reserved the *392 right to appeal the admissibility of the blood test. Merry appealed the Justice Court’s ruling to the District Court and moved to suppress the result of the blood test. The District Court denied Merry’s motion to suppress after considering the parties’ briefs and hearing oral argument. Merry now appeals.
STANDARD OF REVIEW
¶9 We review a district court’s denial of a motion to suppress to determine whether the district court’s findings of fact are clearly erroneous and whether the district court’s conclusions of law are correct. State v. Zakovi, 2005 MT 91, ¶ 9, 326 Mont. 475, ¶ 9,110 P.3d 469, ¶ 9.
DISCUSSION
¶10 I. Did the District Court err when it denied Merry’s motion to suppress the results of his blood alcohol test on the grounds that the sample was collected in violation of § 61-8-405(1), MCA?
¶11 Merry contends that the District Court erred when it concluded that Bailey was acting under the supervision and direction of a physician or RN when she drew his blood. Merry maintains that Bailey was not acting under the supervision and direction of a physician or RN, as required by § 61-8-405, MCA, because neither a physician nor an RN was physically present at the Health Center.
¶12 The District Court’s interpretation of § 61-8-405, MCA, presents a conclusion of law which we review for correctness. State v. Price, 2002 MT 150, ¶ 15, 310 Mont. 320, ¶ 15, 50 P.3d 530, ¶ 15. When interpreting statutes, we seek to implement the Legislature’s objectives. Boettcher v. Montana Guar. Fund, 2007 MT 69, ¶ 19, 336 Mont. 393, ¶ 19, 154 P.3d 629, ¶ 19. The statute’s plain language controls our interpretation if we can discern the legislative intent from the plain meaning of the statute’s words. Boettcher, ¶ 19. Further, we refuse to insert “what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. The definition of a statutorily defined term applies throughout the Montana Code unless “a contrary intention plainly appears.” Section 1-2-107, MCA.
¶13 Section 61-8-405, MCA, governs the administration of blood tests and provides that only a physician, registered nurse, or “other qualified person acting under the supervision and direction of a physician or registered muse,” may withdraw blood to determine the presence of alcohol and drugs. Though Merry claims to dispute that *393 Bailey is a “qualified person,” Merry raises no challenges to Bailey’s qualifications on appeal. Further, Merry’s briefing to the District Court reveals that he regarded Bailey as a qualified person within the meaning of § 61-8-405(1), MCA. For this appeal, we accept without deciding that Bailey, as an LPN, is an “other qualified person” as contemplated by § 61-8-405(1), MCA.
¶14 Merry argues that Bailey was not acting under the supervision and direction of a physician or RN because neither a physician nor an RN was physically present at the Health Center. According to Merry, the plain language of § 61-8-405(1), MCA, clearly and unambiguously requires the physical presence of a physician or an RN for a blood draw administered by an “other qualified person” to be proper. Merry contends that the District Court erred in relying on statutes related to other healthcare professions to interpret the meaning of supervision and direction. The State counters that the legislative history of § 61-8-405, MCA, and this Court’s precedent support a more “general” view of supervision and direction. The State further argues that the purpose of the statute was satisfied in this case because Bailey was under the supervision of an on-call RN.
¶15 Section 61-8-405, MCA, does not define the terms “supervision and direction.” Definitions for “direct supervision,” “general supervision,” and “qualified medical direction” appear in other sections of the Montana Code Annotated; however, in each instance, the Legislature has constrained the applicability of the definitions to particular sections ofthe Code. For example, sections relating to dental hygienists and hearing aid dispenser trainees state that the definitions apply for “the purposes of this section” and the section relating to respiratory care states that the definition is applicable “[a]s used in this chapter.” Sections 37-4-405, 37-16-405, and 37-28-102, MCA. The Legislature plainly has limited the reach of these definitions, and thus, they cannot properly define the terms of § 61-8-405(1), MCA. Section 1-2-107, MCA.
¶16 As the phrase “acting under the supervision and direction” is undefined, we look to the plain meaning of the statute’s words to discern the legislative intent. Boettcher, ¶ 19. The plain meaning ofthe word “under,” as used in the statute means “[s]ubject to the authority, rule or control of: under a dictatorship ... Subject to the supervision, instruction, or influence of: under parental guidance.” American Heritage Dictionary ofthe English Language 1874 (4th ed. Houghton Mifflin Co. 2000). “Supervision” is defined as the “act, process, or function of supervising” and “supervise” means to “have the charge and *394 direction of; superintend.” American Heritage Dictionary of the English Language at 1738-39. “Direction” means “[m]anagement, supervision, or guidance of an action or operation.... An authoritative indication; an order or a command.” American Heritage Dictionary of the English Language at 512. We disagree with Merry that § 61-8-405(1), MCA, clearly and unambiguously requires the physical presence of a physician or RN for a blood draw administered by an “other qualified person” to be proper. The definitions set forth above do not resolve whether § 61-8-405(1), MCA, requires the physical presence of a physician or RN; the plain meaning of the statute’s words is broad enough to encompass both the State’s and Merry’s interpretations. ¶17 We turn to a statute’s legislative history to determine its correct interpretation when we cannot discern the Legislature’s intent from the statute’s plain language. Stockman Bank of Montana v. Mon-Kota, Inc., 2008 MT 74, ¶ 17, 342 Mont. 115, ¶ 17,180 P.3d 1125, ¶ 17. Prior to 1981, § 61-8-405, MCA, authorized only physicians and RNs to draw blood to determine the presence of alcohol. The 1981 amendment allowed “other qualified person[s] under the supervision and direction of a physician or registered nurse” to draw blood. Section 61-8-405, MCA (1981). Unfortunately, the committee minutes do not specify whether the Legislature contemplated that “supervision and direction” would require the actual physical presence of a physician or RN or something more general.
¶18 The committee minutes do indicate, however, that § 61-8-405, MCA, was amended to expand the category of persons who permissibly could conduct a blood test, and thus, to facilitate DUI prosecutions. The committee members heard testimony that blood tests were being challenged because lab technicians conducted blood draws, rather than a physician or RN. Mont. H. Jud. Comm., Hearing on SB 111, 47th Leg., Reg. Sess. 3 (Mar. 5, 1981). Committee members also learned that the individuals who perform the blood draws generally are lab technicians. The bill’s proponents informed the committee that the amended language would remove evidentiary challenges to blood tests which were not performed by a physician or an RN. Mont. H. Jud. Comm., Hearing on SB 111, at 3. Senator Stimatz, who introduced the bill at the request of the Department of Justice (DO J), indicated that “qualified persons, such as laboratory technicians” should be “allowed to take blood samples to determine alcohol level of the blood.” Mont. Sen. Jud. Comm., Hearing on SB 111, 47th Leg., Reg. Sess. 1 (Jan. 19, 1981). Similarly, Representative Daily, who presented the bill in the House, stated that the amendment would “allow a person other than *395 a doctor or a registered nurse to draw blood. A lab technician who specializes in this could withdraw the blood.” Mont. H. Jud. Conun., Hearing on SB 111, at 2. Notably, neither Senator Stimatz nor Representative Daily hinged the lab technician’s ability to draw blood on the physical presence of a physician or RN. Further, Senator Mazurek questioned whether “even broader language in determining who was qualified to draw a blood sample might be helpful.” Mont. Sen. Jud. Comm., Hearing on SB 111, at 1-2. DOJ spokesman Larry Majerus responded that the main intent of the amendment was “to allow the medical technicians to be included” as persons qualified to draw blood samples, but that it was not intended to “take the process out of the hospital environment where such qualified persons would not be available.” Mont. Sen. Jud. Comm., Hearing on SB 111, at 2.
¶19 Given the overall purpose of the amendment, the apparent willingness of the Senate Judiciary Committee to consider even broader language in the statute, and the discussion of laboratory technicians’ ability to draw blood with no mention of a specific level of supervision and direction, we conclude that the Legislature contemplated a more general level of “supervision and direction” than that suggested by Merry. Adopting Merry’s interpretation would require us to insert the terms “onsite” or “direct” to qualify the “supervision and direction” requirement, and thus, to insert what the Legislature omitted. As the Legislature has not limited “supervision and direction” to onsite or direct supervision, we conclude that a physician’s or RN’s physical presence is not required and that a qualified person who draws blood while subject to offsite or on-call supervision can satisfy the statutory requirement that the person be “acting under the supervision and direction of a physician or registered nurse ....” Section 61-8-405(1), MCA.
¶20 Our conclusion that § 61-8-405(1), MCA, does not require the physical presence of a physician or RN finds support in other statutory provisions involving supervision and direction in the healthcare arena. For example, § 37-4-405, MCA, allows a dental hygienist to practice under a licensed dentist’s supervision. The statute differentiates between “direct supervision” and “general supervision” and provides that treatment requiring direct supervision “must be performed while the dentist is on the premises” while treatment falling under general supervision does not require the dentist to be on the premises. Section 37-4-405, MCA. Similarly, § 37-16-405, MCA, requires a trainee who is licensed to dispense hearing aids to “work under the direct supervision of the sponsoring licensed hearing aid dispenser.” In this *396 context, “‘direct supervision’ means the direct and regular observation and instruction of a trainee by a licensed hearing aid dispenser who is available at the same location for prompt consultation and treatment.” Section 37-16-405(8), MCA. Statutes regulating physical therapists and physician assistants also detail when direct or onsite supervision is required. See § 37-11-105, MCA, and § 37-20-403, MCA. Though we do not use these statutes to define the terms of § 61-8-405, MCA, these statutes demonstrate that the Legislature drafts with specificity when it intends to require direct or onsite supervision and direction.
¶21 Moreover, to require the physical presence of a physician or RN when the blood sample is withdrawn renders useless the provision allowing “other qualified persons” to take the blood sample; if the physician’s or RN’s presence is required, the physician or RN could simply perform the blood draw. Such a limited reading contradicts the purpose of the amendment and renders the “other qualified person acting under the supervision and direction of a physician or registered nurse” language moot. Section 61-8-405(1), MCA.
¶22 Our conclusion that a physician’s physical presence is not required under § 61-8-405(1), MCA, is also consistent with Zakovi. In Zakovi, we determined that a phlebotomist conducted a blood draw in accordance with § 61-8-405(1), MCA, because she was “continuously under the supervision of a registered nurse on duty in the emergency room, as her position is subordinate and requires compliance with the registered nurse’s orders under hospital policy.” Zakovi, ¶ 36 (emphasis added). Though the RN in Zakovi was apparently present at the St. Peter’s Hospital complex in Helena, we focused on the phlebotomist’s subordinate position and the requirement that the phlebotomist follow the RN’s orders, rather than on the physical presence of the RN.
¶23 In this case, the District Court heard testimony that both Hans Arnston, the director of nursing and an RN, and Patti Wittkopp, the physician’s assistant, were on call the night that Bailey withdrew Merry’s blood. Nancy Hansen, the Health Center’s CEO, testified that the Health Center does not have a physician, but does have a physician’s assistant who is on call twenty-four hours a day, seven days a week. Hansen further testified that an RN is on call whenever an LPN is on duty, and that Arnston was on call the night that Bailey drew Merry’s blood. According to Hansen, an RN is on call in case a situation arises that an LPN is not qualified to handle.
¶24 Hansen also testified that Arnston provides LPNs training in blood drawing. When an LPN demonstrates his or her proficiency at *397 drawing blood, the LPN receives a “competency” in that area and is permitted to draw blood. Hansen testified that Bailey had received the competency to withdraw blood. Hansen further testified that LPNs are supervised by “telephone the same way our medical provider provides supervision to our physician’s assistant.”
¶25 Bailey testified that she was supervised and directed by superior staff on the night that she drew Merry’s blood. Bailey testified that Amston and Wittkopp are her supervisors and that Arnston was the person she calls when she needs assistance. She stated, “I am under the direction of an RN at all times. If I need them to come in and I can’t handle a situation, I do, I call. [There’s] always somebody on call for me.”
¶26 The District Court determined that Bailey was subject to the supervision and direction of the on-call RN and that the offsite level of supervision and direction satisfied the requirements of § 61-8-405(1), MCA. The supervision in this case falls within the statutory language and is consistent with the purpose of § 61-8-405(1), MCA; thus, we conclude that the District Court did not err when it concluded that the offsite supervision and direction of the on-call RN satisfied the requirements of § 61-8-405(1), MCA, and that the District Court correctly denied Merry’s motion to suppress.
¶27 II. Does the Health Center’s policy unlawfully allow LPNs to conduct blood draws without the supervision and direction of a physician or registered nurse?
¶28 Merry maintains that the Health Center’s policy added LPNs to the list of professionals who are authorized to draw blood without the supervision and direction of a physician or RN. Merry contends that such an amendment to § 61-8-405(1), MCA, is unlawful.
¶29 We conclude that Merry’s argument is meritless. Montana law, not a health facility’s policy, governs the admissibility of a blood sample. To be admissible, a blood sample must have been obtained by a physician, RN, or “other qualified person” acting under a physician’s or RN’s supervision and direction. Section 61-8-405(1), MCA. As discussed under Issue I, Bailey met the statutory requirements, and the District Court did not err in denying Merry’s motion to suppress.
¶30 III. Do violations of the Health Center’s policy demonstrate that Bailey was not an “other qualified person acting under the supervision and direction of a physician or registered nurse” as required by § 61-8-405(1), MCA?
¶31 Merry contends that Bailey did not comply with the Health Center’s policy when she drew Merry’s blood sample because she did *398 not obtain a written statement, as required by the policy, from Deputy Speer asserting that Merry was under arrest for DUI or that Deputy Speer had probable cause to believe Merry was DUI and had been in an accident. Merry claims these failures establish that Bailey was not a “qualified person acting under the supervision and direction of a physician or registered nurse” as required by § 61-8-405(1), MCA. We decline to address this issue. As discussed in ¶ 29, Montana law, not a health facility’s policy, governs the admissibility of a blood sample. We determined under Issue I that Bailey drew Merry’s blood in accordance with § 61-8-405(1), MCA.
¶32 IV. Did the District Court err when it used Merry’s failure to controvert his implied consent to support its ruling?
¶33 The District Court determined that Bailey met the requirements of § 61-8-405(1), MCA, when she took Merry’s blood sample. In the final sentence of the order, the District Court observed, “[a]lso, [Merry] did not controvert that he consented to the blood draw” at the Health Center. Merry contends that the District Court’s order suggests that Merry waived the statutory protections of § 61-8-405(1), MCA, based on his implied consent. Merry argues that the court’s requirement that he refute his consent as a condition to challenging the admissibility of his blood draw is inconsistent with Montana law and constitutional guarantees. We determined under Issue I that the District Court correctly concluded that Bailey met the statutory requirements of § 61-8-405(1), MCA, and that the District Court correctly denied Merry’s motion to suppress. Thus, we need not address the District Court’s alternative rationale.
¶34 Affirmed.
JUSTICES COTTER, WARNER, MORRIS and RICE concur.