JUSTICE NELSON
dissents.
¶35 I agree with ¶¶ 13 and 15 of the Court’s Opinion. However, given the statute’s plain language and its sketchy legislative history (Opinion, ¶¶ 17 and 18), I believe that the Court misreads § 61-8-405(1), MCA. This statute provides:
Only a physician or registered nurse, or other qualified person acting under the supervision and direction of a physician or registered nurse, may, at the request of a peace officer, withdraw blood for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person. This limitation does not apply to the sampling of breath. [Emphasis added.]
¶36 From what legislative history there is, I believe that the *399 Legislature amended § 61-8-405(1), MCA, in 1981 to accomplish two things. First, the Legislature acknowledged that there are any number of persons who are qualified by training and experience to draw blood. Second, the Legislature, nevertheless, believed that it was still necessary to vest in two particular types of professional healthcare providers-physicians and registered nurses-the power to decide whether blood should be drawn and, if so, by whom.
¶37 As noted in ¶ 18, the bill’s proponents were desirous of removing challenges to blood tests “not performed” by a physician or registered nurse. The DOJ believed that “qualified persons, such as laboratory technicians” should be “allowed to take blood samples” (emphasis added). Likewise, Senator Mazurek was concerned about the limitations on those who could “draw” blood. However, with its main goal to broaden the categories of persons who could draw or take blood, the Legislature still required that if the blood sample was not physically drawn by the physician or registered nurse, the otherwise “qualified person” drawing the sample had to act under the “supervision and direction” of a physician or registered nurse. Section 61-8-405(1), MCA.
¶38 With that in mind, I believe that, at a minimum, the “acting under the supervision and direction” language of the statute contemplates: (1) that the physician or registered nurse actually determine that the blood draw is medically appropriate in terms of there being a lawful request, from an authorized person, to perform the test on a proper patient[1] (hereafter, I refer to these, collectively, as the medical determinations); and (2) that, having made these medical determinations, the physician or registered nurse then orders the person who he or she deems qualified to actually draw the blood.
¶39 The Court’s interpretation of the statutory language marginalizes the role of the physician or registered nurse and the medical determinations that would necessarily be made before ordering a blood draw-for DUI purposes or otherwise. The plain language of the statute requires that the physician or registered nurse be the person in charge-i.e., be acting in a supervisory and directive capacity over the technician. Here, the record is clear that LPN Bailey-qualified to draw blood though she may be-was the person in charge. It was she who made the medical determinations referred to above. It was she who *400 was acting as her own supervisor-utilizing her actual supervisors only in the event that “she needled] assistance” or when there was a situation she could not “handle.” Opinion, ¶ 25.
¶40 That is not what § 61-8-405(1), MCA, requires. Under the framework of the statute, the technical person draws the blood. The physician or registered nurse determines if, how, and from whom the blood sample is to be taken. The Court’s interpretation of the statute effectively emasculates the function of the physician and registered nurse. As here, those decision-making professionals are relegated to pinch-hitters if something goes wrong during the draw-people to call if back-up or advice is needed or if the situation devolves into something the technician can’t handle. While I agree that the statute does not textually address the on-site/off-site issue, it strikes me that a healthcare provider is simply asking to be sued if a DUI blood draw goes south, and the technician-who made the medical determinations at the outset-is left to frantically try to locate a physician or registered nurse to bail her or him out.
¶41 Curiously, the Court cites State v. Zakovi, 2005 MT 91,326 Mont. 475, 110 P.3d 469, in support of its decision. Rather, Zakovi supports the undersigned’s interpretation of the statutory language. In that case, the defendant moved to suppress the blood alcohol test on the grounds that the sample was collected in violation of § 61-8-405(1), MCA. Zakovi contended that the technician withdrew his blood sample at the request of the arresting officer and not pursuant to the supervision or direction of a physician or registered nurse. Zakovi, ¶¶ 33-34. We observed in that case that the technician testified that she was “continuously under the supervision of a registered nurse on duty in the emergency room, as her position is subordinate and requires compliance with the registered nurse’s orders under hospital policy.” Zakovi, ¶ 36. Accordingly, we concluded that the blood sample was drawn in accordance with the statutory requirements. Zakovi, ¶ 36.
¶42 Unlike Zakovi, the record here is clear that Bailey was not continuously under the supervision of a registered nurse on duty in the emergency room, nor did Bailey draw Merry’s blood sample in compliance with a registered nurse’s order. Indeed, Bailey was in charge of the whole blood-draw operation; she acted on no physician’s or registered nurse’s orders; she was neither supervised nor directed by anyone. Bailey’s supervisors were simply “on-call” if she needed help, needed advice, or couldn’t handle the situation. Zakovi supports the diametrically opposite result than that reached by the Court here. ¶43 Under the Court’s interpretation of the statute, the technician is *401 the person actually in charge of the entire blood-draw operation. The technician involves the physician or registered nurse only in the event of an apparent emergency. That is not what the “acting under the supervision and direction” language plainly requires or what the Legislature obviously envisioned. From the structure and language of § 61-8-405(1), MCA, the Legislature contemplated that the medical determinations referred to above would be made at a certain professional level-by a physician or registered nurse-as opposed to the technical level at which they were made here, and at which they will be made in future cases based on our Opinion.
¶44 I would hold that Merry’s blood sample was collected in violation of § 61-8-405(1), MCA; I would order that blood sample evidence suppressed; and I would reverse and remand for further proceedings ¶45 Accordingly, I dissent.
CHIEF JUSTICE GRAY joins in the dissent of JUSTICE NELSON.

 I presume that neither this Court nor the Legislature deems a person to be any less entitled to appropriate medical determinations, protocols and treatment when undergoing a blood draw simply because he or she is drunk.