FILED

December 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0712

DA 14-0712

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 349

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JASON DEAN ALLPORT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                    In and For the County of Lincoln, Cause No. DC-14-2
                    Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Koan Mercer, Assistant Appellate Defender, John M. Wolff, Law Student
            Intern; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
            Attorney General; Helena, Montana

            Bernard G. Cassidy, Lincoln County Attorney; Libby, Montana

                              Submitted on Briefs:  November 18, 2015
                                      Decided:  December 29, 2015

Filed:

_____
                                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Jason D. Allport appeals from the judgment and sentence of the Nineteenth Judicial District Court, Lincoln County, which sentenced him to a 13-month commitment at the Montana Department of Corrections (DOC) followed by a five-year suspended commitment at the DOC for driving under the influence of alcohol (DUI), a fifth-offense felony. We affirm.

¶2 The issue on appeal:

*Whether the District Court correctly ruled that the result of Allport's blood-alcohol test was admissible at trial because Allport's blood sample was taken in compliance with § 61-8-405(1), MCA.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On December 17, 2013, at approximately 9:30 p.m., Lincoln County Sheriff's Deputy Boyd White observed a moving vehicle with the driver-side headlight out. Deputy White pulled the vehicle over and, when he approached, he found Allport alone in the vehicle looking at Deputy White "with a blank stare." Deputy White could smell alcohol from inside Allport's vehicle, and he noticed that Allport's eyes were "kind of glassy and bloodshot." Deputy White asked Allport if he had been drinking any alcohol, and Allport said he had one shot five hours earlier. Deputy White asked Allport to step out of the vehicle so Deputy White could conduct field sobriety tests. Deputy White was unable to complete the horizontal gaze nystagmus test, and Allport failed the other field sobriety tests.

¶4 When Allport was inside the patrol vehicle, Deputy White read him the Implied Consent Advisory. Allport refused a blood-alcohol test. Deputy White applied for and

2

was granted a search warrant to get a sample of Allport's blood. Deputy White drove Allport to Cabinet Peaks Medical Center in Libby, and at approximately 11:30 p.m. medical technologist David Baker took a blood sample from Allport.

¶5 Baker regularly takes blood samples and conducts a number of laboratory tests for the Medical Center. Baker has a Bachelor's degree in clinical laboratory science, and he is a trained phlebotomist. On the night of December 17, 2013, Baker was working alone at the Medical Center. Baker testified at trial that "[t]here is no one supervising me at night but our lab has a manager and it is overseen by an MD from Kalispell." Baker testified that the lab manager is his direct supervisor. After taking the sample of Allport's blood, Baker filled out the required paperwork, sealed the sample, and returned the sample to Deputy White. Allport's blood sample was sent to the State Crime Lab for analysis. The State Crime Lab reported that Allport's blood sample contained a blood-alcohol content of 0.237%.

¶6 On January 2, 2014, Allport was charged by information with DUI, or alternatively, with operating a vehicle with a blood-alcohol concentration of 0.08 or more. The District Court held a jury trial on June 3 and 4, 2014. At trial, Allport objected to the admission of his blood-alcohol test results. Allport contended that the blood sample was not taken by a physician, registered nurse, or a qualified person acting under the supervision of a physician or registered nurse, as required by § 61-8-405(1), MCA. The District Court overruled the objection, stating that under *State v. Merry*, 2008 MT 288, 345 Mont. 390, 191 P.3d 428, the supervision of a nonresident physician meets the requirements of § 61-8-405(1), MCA. The jury found Allport guilty of DUI.

¶7 On September 15, 2014, Allport was sentenced to a 13-month commitment to the DOC and a consecutive five-year suspended commitment to the DOC for a fifth-offense felony DUI. Allport appeals.

**STANDARD OF REVIEW**

¶8 "The District Court's interpretation of § 61-8-405, MCA, presents a conclusion of law which we review for correctness." *Merry*, ¶ 12.

**DISCUSSION**

¶9 *Whether the District Court correctly ruled that the result of Allport's blood-alcohol test was admissible at trial because Allport's blood sample was taken in compliance with § 61-8-405(1), MCA.*

¶10 Allport argues that his blood sample was not taken in compliance with § 61-8-405(1), MCA. The statute states in relevant part:

> Only a physician, registered nurse, or other qualified person acting under the supervision and direction of a physician or registered nurse may, at the request of a peace officer, withdraw blood for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person.

Section 61-8-405(1), MCA. "[A] qualified person who draws blood while subject to offsite or on-call supervision can satisfy the statutory requirement that the person be 'acting under the supervision and direction of a physician or registered nurse . . . .'" *Merry*, ¶ 19 (quoting § 61-8-405(1), MCA).

¶11 According to Allport, *Merry* requires that a supervising physician or registered nurse must be present or on-call at the time a blood draw is performed, otherwise a qualified person is not "acting under the supervision and direction of a physician or

4

registered nurse" under § 61-8-405(1), MCA. Allport argues that because Baker testified that he is not directly supervised by a present or on-call registered nurse or physician, his blood sample was taken in violation of § 61-8-405(1), MCA. Therefore, Allport argues that the results of his blood-alcohol test were improperly admitted at trial.

¶12 "[W]hen interpreting a statute, we seek to implement the objectives the Legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls." *Montanans for Justice v. State*, 2006 MT 277, ¶ 60, 334 Mont. 237, 146 P.3d 759. In *Merry*, this Court recognized that the plain meaning of the phrase "under the supervision and direction" was broad enough to encompass multiple interpretations. *Merry*, ¶ 16.

¶13 "When the legislative intent cannot be readily derived from the plain language, we review the legislative history and abide by the intentions reflected therein." *Montanans for Justice*, ¶ 60. In 1981, the Legislature added the language allowing "other qualified person[s] acting under the supervision and direction of a physician or registered nurse" to take blood samples under § 61-8-405(1), MCA. 1981 Mont. Laws ch. 103 § 4. Senator Stimatz of Butte introduced the bill amending § 61-8-405(1), MCA, to the Montana Senate at the request of the Montana Department of Justice (DOJ). Mont. S. Jud. Comm., *Hearing on S.B. 111*, 47th Reg. Sess., Mins. at 1 (Jan. 19, 1981). The DOJ requested the bill because blood-alcohol test results were being challenged in court if a blood sample was not drawn by a doctor or registered nurse. Mont. H. Jud. Comm., *Hearing on S.B. 111*, 47th Reg. Sess., Mins. at 3 (Mar. 5, 1981). Chad

5

Smith of the Montana Hospital Association testified that blood samples are usually drawn by lab technicians. Mont. H. Jud. Comm., Mins. at 3.

¶14 As we recognized in *Merry*, the bill's sponsors in both the Senate and the House focused on allowing qualified persons to take blood samples, rather than the supervision requirements. *Merry*, ¶ 18. In the Senate, Senator Stimatz "suggest[ed] that qualified persons, such as laboratory technicians, be allowed to take blood samples to determine alcohol level of the blood." Mont. S. Jud. Comm., Mins. at 1. In the House, Representative Daily said the bill "will allow a person other than a doctor or a registered nurse to draw blood. A lab technician who specializes in this could withdraw blood." Mont. H. Jud. Comm., Mins. at 2. Neither sponsor "hinged the lab technician's ability to draw blood on the physical presence of a physician or RN." *Merry*, ¶ 18.

¶15 Furthermore, during the Senate hearing on the bill, Senator Mazurek asked if even broader language to define persons who could take blood samples would be helpful. Larry Majerus of DOJ stated that "the main intent was to allow the medical technicians to be included, not to take the process out of the hospital environment where such qualified persons would not be available." Mont. S. Jud. Comm., Mins. at 1-2.

¶16 In this case, Baker is a medical technologist, a certified phlebotomist, and he works at Cabinet Peaks Medical Center, a hospital. Although Baker does not work under the direct supervision of an MD or a registered nurse, he is a qualified person working in a hospital environment. Contrary to Allport's assertion that a physician or registered nurse must be present or on-call to comply with § 61-8-405(1), MCA, we concluded in *Merry* that "offsite *or* on-call supervision" satisfies § 61-8-405(1), MCA. *Merry*, ¶ 19

6

(emphasis added). Cabinet Peaks Medical Center is supervised by an offsite MD in Kalispell. Allport's blood sample was taken in compliance with § 61-8-405(1), MCA, and the results of the blood-alcohol test performed on the blood sample were properly admitted at trial.

## CONCLUSION

¶17 The District Court was correct when it ruled that Allport's blood sample was taken in compliance with § 61-8-405(1), MCA, and the results of the blood-alcohol test performed on the blood sample were properly admitted at trial. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

7