No. 96-262
IN THE SUPREME COURT OF THE STATE OF MONTANA

MISSOULA CITY-COUNTY AIR
POLLUTION CONTROL BOARD,

   Petitioner and Appellant,

  v.

BOARD OF ENVIRONMENTAL REVIEW,

   Respondent and Respondent,

  and

STONE CONTAINER CORPORATION,

   Intervernor and Respondent.



APPEAL FROM: District Court of the Fourth Judicial District, In and for the County of Missoula, The Honorable Ed McLean, Judge Presiding.


COUNSEL OF RECORD:

  For Appellant:

    Robert L. Deschamps, III, County Attorney; Martha E. McClain, Deputy County Attorney, Missoula, Montana

    William A. Rossbach, Missoula, Montana

  For Respondents:

    Honorable Joseph P. Mazurek, Attorney General; W. D. Hutchison, Assistant Attorney General, Helena, Montana

    Jeanne M. Bender and W. Scott Mitchell, Holland and Hart, Billings, Montana

    Cindy Younkin, Board of Environmental Review, Helena, Montana

            Heard and Submitted: March 11, 1997
               Decided: April 17, 1997

Filed:

_____
        Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The Missoula City-County Air Pollution Control Board (Local Board) appeals a decision of the Fourth Judicial District Court, Missoula County, dismissing its petition for judicial review and declaratory judgment. We reverse and remand for further proceedings consistent with this Opinion.

The issues are:

1. Did the District Court err in ruling that the Local Board does not have standing to challenge the validity of administrative rules adopted by the Board of Environmental Review (State Board)?

2. Did the court err in ruling that the Local Board's first amended petition was not timely filed?

3. Did the court err in ruling that the State Board's September 1994 final order was moot?

Stone Container Corporation operates a kraft pulp mill near Missoula, Montana. The Local Board is the local air pollution authority for the City and County of Missoula, approved by the State Board pursuant to § 75-2-301, MCA. The Local Board does not have general regulatory authority over Stone Container, however, because Stone Container is an air pollution source that emits more than 250 tons of regulated pollutants per year. See § 75-2-301(4)(c), MCA. Instead, the Montana Department of Environmental Quality, formerly the Montana Department of Health and Environmental Sciences (Department), is responsible

2

for issuing air quality permits to Stone Container. The State Board is responsible for adopting, amending, and repealing rules for the administration, implementation, and enforcement of the Clean Air Act of Montana. See § 75-2-111, MCA.

This case originated from a dispute between Stone Container and the Department over modifications the Department made to the air quality permit for Stone Container's kraft pulp mill. In December 1992, Stone Container appealed to the State Board concerning changes by the Department in the most recent permit the Department had issued for the mill.

The Department and Stone Container subsequently stipulated to the resolution of all but one of the provisions of the permit which Stone Container had appealed to the State Board. The remaining unresolved issue was the Department's inclusion in the permit of a 20 percent opacity limit for emissions from recovery boiler number 4 at the kraft pulp mill. Opacity is defined as the degree, expressed in percentage, by which emissions reduce the transmission of light and obscure the view of an object in the background. ARM 17.8.101(27).

Stone Container petitioned the State Board for a declaratory ruling interpreting ARM 16.8.1404 (now ARM 17.8.304), Visible Air Contaminants, and its application to recovery boiler number 4 at the pulp mill. The Local Board petitioned to intervene in the action before the State Board. Stone Container opposed the petition to intervene, and the State Board subsequently denied the petition.

After holding a hearing on Stone Container's petition for a declaratory ruling, the State Board voted to interpret ARM 16.8.1404 to allow Stone Container a 35 percent opacity limit for recovery boiler number 4. The State Board entered its written order so ruling on September 16, 1994. On October 6, 1994, the Department petitioned for rehearing.

On October 17, 1994, the Local Board, acting as a "person" aggrieved by the State Board's September 16 order, filed a petition for judicial review in the Fourth Judicial District Court. The court granted Stone Container's motion to intervene in the judicial review proceeding. In addition, the court granted the State Board's motion to stay the proceeding pending the outcome of an administrative rule amendment process then being conducted by the State Board.

The State Board adopted amendments to the administrative rules in August 1995. The amendments made kraft pulp mills (Stone Container was the only kraft pulp mill in Montana) exempt from ARM 16.8.1404. The amendments provided opacity standards and monitoring requirements in amendments to ARM 16.8.1413 and 16.8.1429 (now ARM 17.8.302 and 17.8.321).

Stone Container moved to withdraw its petition which was then still pending before the State Board. Stone Container and the Department also stipulated to request that the State Board withdraw its September 16, 1994 order. At its December 1995 meeting, the State Board voted to dismiss Stone Container's petition.

Meanwhile, on November 7, 1995, the Local Board filed in the District Court its first amended petition for judicial review and declaratory judgment, seeking, in addition to judicial review of the State Board's September 16, 1994 order, a declaratory judgment that the amended rules were invalid. Stone Container moved the District Court to dismiss the amended petition pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief can be granted. The court granted the motion on grounds that the Local Board lacked standing to bring an action on behalf of the Missoula public to challenge the rule-making procedures leading to the State Board's adoption of the challenged amendments. The court also ruled that the State Board's actions and final ruling in the administrative declaratory proceeding had been rendered moot by the 1995 amendments to the rules. It further ruled that the petition's request for judicial review of rule-making procedures was untimely. The Local Board appeals. As it did in District Court, Stone Container appears as an intervenor pursuant to Rule 24(a)(2), M.R.Civ.P.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pled allegations in the complaint. In considering the motion, the complaint must be construed in the light most favorable to the plaintiff, whose allegations of fact must be taken as true. Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317. The determination that a complaint does not state a claim upon which relief can be granted

5

is a conclusion of law which this Court reviews to determine whether the district court is correct. Lockwood, 900 P.2d at 317.

## ISSUE 1

Did the District Court err in ruling that the Local Board does not have standing to challenge the validity of administrative rules adopted by the State Board?

In Simon v. Eastern Ky. Welfare Rights Org. (1976), 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460, the United States Supreme Court defined standing as requiring (and assuming justiciability of the claim) that the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. This Court has stated that the concept of standing arises from two different doctrines: (1) the discretionary doctrine aimed at prudently managing judicial review of the legality of public acts, and (2) the doctrine of constitutional limitations drawn from the "cases and controversies" definition of federal judicial power in Article III of the United States Constitution and the "cases at law and in equity" definition of state judicial power in Article VII, Section 4, Montana Constitution. Olson v. Department of Revenue (1986), 223 Mont. 464, 469-70, 726 P.2d 1162, 1166.

With respect to the prudential basis for standing, this Court has stated that the trial court's discretion cannot be defined by hard and fast rules, and that the importance of the question to the public "surely is an important factor." Committee for an Effective Judiciary v. State (1984), 209 Mont. 105, 110, 679 P.2d 1223, 1226. The constitutional aspect of standing requires the plaintiff to show that plaintiff has been personally injured or threatened

6

with immediate injury by the alleged constitutional or statutory violation. Olson, 726 P.2d at 1166.

On the question of whether the Local Board has standing to bring this action, the District Court stated:

> [T]he Missoula Control Board has failed to show it has standing to prosecute such an action. The Missoula Control Board asserts in its First Amended Petition that it has standing because it has the role of serving as an advocate for the interests of the citizenry of Missoula County regarding the quality of Missoula's air and is charged with the responsibility to protect such interests on behalf of the Missoula public in the State of Montana Air Quality Control Implementation Plan (commonly referred to as "SIP").
>
> . . . In sum, a local control board is a legislatively-authorized, Department-approved agent of the Department, and as such has only those powers specifically allowed by the Legislature and specifically delegated to it by the Department. Nothing in either Part 3 of Title 75, Chapter 2, nor in the SIP, authorizes the local control board to prosecute an action in an advocacy role on behalf of the citizenry of Missoula County.

The Local Board disagrees with that ruling.

At the outset, the Local Board disputes the District Court's statement that it is an agency of the Department. The Local Board points out that the powers of a local air pollution control board are set forth at § 75-2-301(3), MCA, as part of the Clean Air Act of Montana. The extent of the Local Board's responsibilities and the limits to its powers are contained in the Montana Air Quality Control Implementation Plan (SIP). The SIP provides:

> [The Local Board's] air pollution control program . . . is designed to mesh with and enhance the state air pollution control program. It is the purpose of the Missoula City and County air pollution control program to achieve and maintain such levels of air quality as will protect human health and safety and, to the greatest degree practicable, prevent injury to plant and

7

animal life and property, foster the comfort and convenience of the people, promote the economic and social development of Missoula City and County and facilitate the enjoyment of the natural attractions of Missoula City and County.

The federal Environmental Protection Agency (EPA) reviews SIPs and may impose sanctions, including withholding of federal highway transportation funds, if a local area fails to comply with the provisions of the SIP.

Stone Container points out that the Local Board does not have general regulatory authority over its kraft pulp mill. It contends that, as a result, the Local Board has no standing to bring this action. The Local Board responds by citing its emergency regulatory powers under § 75-2-402, MCA, and the Missoula City-County Air Pollution Control Program, which include authority to order persons causing or contributing to air pollution to immediately reduce or discontinue emissions, and which extend over Stone Container's kraft pulp mill.

Moreover, the Local Board strongly disagrees with the idea that it must possess regulatory power over Stone Container to have standing to bring this action. It correctly states that a distinction exists between possessing regulatory authority over an entity and having standing to sue, under the above two-pronged standard, concerning administrative regulation of that entity.

The State Board and Stone Container assert that the Local Board has made no showing, other than speculative, of present or threatened injury to it, personally. Stone Container points out that the personal stake requirement in standing analysis is dispositive,

citing Carter v. Montana Dept. of Transp. (1995), 274 Mont. 39, 905 P.2d 1102. The Local Board replies, however, that injury need not be exclusive to the complaining party in order for that party to have standing. Sanders v. Yellowstone County (1996), 276 Mont. 116, 915 P.2d 196. The Local Board contends, and we agree, that its interest in the effective discharge of the obligations imposed upon it by law is the equivalent of the personal stake which would support standing of a private citizen of the Missoula airshed. It is clear to this Court that a citizen of Missoula, as one who breathes the air into which Stone Container is expelling pollutants, would have standing to bring this action. The Local Board is a person within the definition of that word at § 2-4-102(8), MCA, as "an individual, partnership, corporation, association, governmental subdivision, agency, or public organization of any character." In the same way as a citizen of the Missoula airshed is more particularly affected by the State Board's act than is a citizen of another area, the interest of the Local Board is distinguishable from and greater than the interest of the public generally.

As to the requirement of present or threatened injury, "[o]ther courts have held and we agree, that potential economic injury is sufficient to establish standing." Montana Human Rights Div. v. City of Billings (1982), 199 Mont. 434, 443, 649 P.2d 1283, 1288. For example, in Rosebud Cty. v. Dept. of Rev. (1993), 257 Mont. 306, 849 P.2d 177, a county's substantial interest in the protection of its tax base and its potential for economic harm in the valuation of heavy equipment was sufficient to give the county standing to challenge administrative rules.

9

The Local Board argues that it faces potential economic harm from the additional expenses necessary to monitor, collect and analyze data and to develop a regulatory response which will ensure that Missoula air quality meets minimum federal standards in the face of increased air pollution from Stone Container. In its amended petition for judicial review and declaratory judgment, the Local Board points out that Missoula County has been designated a nonattainment area by the EPA for carbon monoxide and fine particulate, and that additional requirements are imposed upon Missoula County and the State by federal law as a result of this nonattainment status. The Local Board further points out that the State Board's action in reducing air quality standards applicable to Stone Container may require the Local Board to take additional regulatory and enforcement action against other pollution sources in the Missoula airshed to comply with state and federal particulate standards and SIP requirements.

The issue here involved, air quality in Missoula, is indubitably an issue of importance to the Missoula public. Further, where two entities share regulatory power regarding air quality in one physical location, as do the Local Board and the Department in the Missoula airshed, the actions of one necessarily impact the other. We conclude that threatened injury to the Local Board has been established. We hold that the Local Board has standing to challenge the validity of administrative rules concerning air pollution applicable within its area of jurisdiction.

We thus hold that the District Court erred in concluding that the Local Board did not have standing to bring this action. Therefore, this matter must be remanded to District Court for further proceedings.

ISSUE 2

Did the court err in ruling that the Local Board's first amended petition was not timely filed?

The Local Board's amended petition states that this action was brought pursuant to Title 2, Chapter 4, part 7, MCA, "Judicial Review of Contested Cases." The District Court ruled that to the extent the amended petition sought judicial review of rule-making procedures, such judicial review was barred under § 2-4-702(2)(a), MCA. That statute requires that a claim for judicial review of a contested case must be filed within thirty days of the final decision of the agency. The State Board claims that date is the August 1995 publication date giving public notice that the agency had adopted amendments to the rules. The State Board argues that new issues raised in the Local Board's November 7, 1995 first amended petition (i.e., the claims concerning the amended rules) do not relate back to the original petition.

In addition to citing Title 2, Chapter 4, part 7, MCA, the amended petition also asserts that the amendments to the administrative rules violate § 2-4-506, MCA. That statute provides:

> (1) A rule may be declared invalid or inapplicable in an action for declaratory judgment if it is found that the rule or its threatened application

11

interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the plaintiff.

(2) A rule may also be declared invalid in such an action on the grounds that the rule was adopted with an arbitrary or capricious disregard for the purpose of the authorizing statute as evidenced by documented legislative intent.

(3) A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

(4) The action may be brought in the district court for the county in which the plaintiff resides or has his principal place of business or in which the agency maintains its principal office. The agency shall be made a party to the action.

A declaratory action pursuant to § 2-4-506, MCA, is not subject to the thirty-day limitation imposed on proceedings for judicial review in contested cases under § 2-4-702, MCA.

The amended petition in this case asks the court to, among other things, declare void the 1995 amendments to ARM 16.8.1404, 16.8.1413 and 16.8.1429 (now ARM 17.8.304, 17.8.302 and 17.8.321), which the Local Board alleges were adopted with an arbitrary or capricious disregard for the purpose of the authorizing statute. The amended petition thereby seeks declaratory judgment regarding the amendments to the rules. We conclude that, to the extent it seeks declaratory judgment on the validity of the 1995 amendments to those administrative rules, the amended petition is not subject to the thirty-day rule set forth at § 2-4-702(2)(a), MCA, and was timely filed.

## ISSUE 3

Did the court err in ruling that the State Board's September 1994 final order is moot?

A question is moot when it no longer presents a justiciable controversy because the issues involved have become academic or dead or any action the court may take will have no effect on the situation of the parties. State v. Mesler (1984), 210 Mont. 92, 682 P.2d 714; State v. Warden (1981), 191 Mont. 520, 625 P.2d 543. In short, a question is moot when the court cannot grant effective relief. Turner v. Mountain Engineering and Const., Inc. (1996), 276 Mont. 55, 915 P.2d 799.

An exception to the mootness doctrine exists for actions which are capable of repetition, yet, because they are too short in duration to be fully litigated prior to cessation or expiration, they evade review. This exception is usually applied to situations involving governmental action where it is feared that the challenged action will be repeated. Butte-Silver Bow Local Govern. v. Olsen (1987), 228 Mont. 77, 82, 743 P.2d 564, 567.

In the present case, the amended administrative rules were published on August 10, 1995. At its December 1995 meeting, after the Local Board's first amended petition was filed, the State Board voted to dismiss Stone Container's petition for declaratory ruling which was the subject of the State Board's September 1994 final order. No written order of dismissal was entered, however.

The State Board and Stone Container argue that the September 1994 final order is moot because it has been superseded by the amended rules and because the order was withdrawn by the State Board when the State Board voted to dismiss Stone Container's petition for declaratory ruling. They argue that no live controversy exists as to this matter.

Amending disputed rules as a means of resolving a contested case without fully engaging in statutory administrative rule-making procedural requirements, as is alleged to have occurred in this case, is a governmental action which may evade review, yet is capable of repetition. If the District Court determines that the 1995 rule amendments are valid, this allegation of impropriety may well be adjudged disproved as part of that determination. If, however, the court determines that the amendments are invalid, it must then determine whether the previous version of the rules is revived. If the District Court determines that the amendments are invalid but that the preamendment rules are still in effect, the issue is within the exception to the mootness doctrine, because it evades review, yet is capable of repetition.

In summary, we conclude that the District Court erred in ruling that the Local Board lacked standing to maintain this action and that the Local Board's amended petition for declaratory relief was untimely. We therefore remand for further proceedings concerning those matters. Final resolution of the mootness issue concerning the State Board's September 16, 1994 order will depend upon additional determinations to be made by the District Court on remand.

Reversed and remanded for further proceedings consistent with this Opinion.

J. A. Turnage
Chief Justice

14

We concur:

_____

_____

_____

_____

_____

_____
Justices