FILED

03/14/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0380

DA 16-0380

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 57

LEE SWANSON, Individually and as the
Personal Representative of the Estate of
Maria Atkins-Swanson,

        Plaintiff and Appellant,

    v.

CONSUMER DIRECT,

        Defendant and Appellee.

---

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 14-1797
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeffrey A. Simkovic, Billings Legal, PLLC, Billings, Montana

          Daniel G. Gillispie, Attorney at Law, Billings, Montana

      For Appellee:

          Peter J. Stokstad, Justin K. Cole, Garlington, Lohn & Robinson, PLLP,
Missoula, Montana

---

Submitted on Briefs:  January 25, 2017

Decided:  March 14, 2017

Filed:

                                _____
                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Lee Swanson (Swanson) appeals from the orders of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to Defendant Consumer Direct and denying his M. R. Civ. P. 59(e) motion to alter or amend the judgment. We affirm and address the following issue:

*Did the District Court err by denying Swanson's motions on the ground that the claims were foreclosed under § 53-6-145, MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Swanson is the Personal Representative of the Estate of Maria Atkins-Swanson (Atkins-Swanson), who tragically died in 2013. Atkins-Swanson was a participant in a government-sponsored program that forms the legal context for the claims brought by Swanson against Consumer Direct.

**Program Overview**

¶3 The Social Security Act authorizes States to create, design, and administer home and community-based Personal Assistance Services Programs (PASPs), aimed at assisting the elderly and people with disabilities, collectively referred to as "Consumers," with residential living. *See*, *generally*, 42 U.S.C. §§ 1396 et seq. (2012). PASPs help Medicaid-eligible Consumers maintain their independence, preserve their connection to the community, and avoid institutionalization by receiving support in their homes. Section 53-6-145(2)(d), MCA. Under a PASP, Consumers can obtain personal assistant

services, or PAS, including assistance with activities of daily living,[1] household tasks, and escort services. Admin. R. M. 37.40.1101(2) (1995); § 53-6-145(2)(d), MCA. The Social Security Act grants States broad discretion in designing and implementing PASPs. The Montana Legislature has determined that Montana should participate in the program and has directed the Department of Public Health and Human Services (DPHHS) to establish PASPs for eligible Montanans. Section 53-6-145(1), MCA.

¶4 Pursuant to this directive, DPHHS has developed two different PASPs. The first program is designated as the Agency-Based PASP, which provides for the delivery of services by qualified personal care provider agencies. The provider agency works with the Consumer to establish the schedule for service provision and provides the trained staff necessary for the delivery of care. Under this program, Consumers have no authority and must rely on the provider agency to coordinate and provide the appropriate services.

¶5 The second program developed by DPHHS is designated the Self-Directed PASP. This is the program in which Atkins-Swanson was participating at the time of her death.[2] Under the Self-Directed PASP, the Consumer "has the primary responsibility . . . [for] scheduling, training, and supervis[ing] . . . the personal assistant." Admin. R. M. 37.40.1305(2)(a) (1995). Further, "[t]he consumer has the right to require that a

---

[1] One of the "activities of daily living" as defined in the Administrative Rules of Montana is the self-administration of medication. Admin. R. M. 37.40.1101(3) (1995).

[2] The regulations governing Montana's PASP underwent revision in 2014. We cite the regulations in effect during Atkins-Swanson's participation in the program.

particular assistant discontinue providing services to the consumer." Admin. R. M. 37.40.1305(2)(a) (1995). The Self-Directed PASP enables qualified Consumers to exert autonomy over their care needs and is "intended to provide control of service delivery to the consumer and to allow the consumer to direct health related tasks." Admin. R. M. 37.40.1301(1) (1995).

¶6 To qualify for the Self-Directed PASP under the regulations governing the program in 2013, a Consumer was required to:

> (a) have a medical condition which results in the need for personal assistance services;
> (b) *be capable of assuming the management responsibilities of assistants* or have an immediately involved representative willing to assume this responsibility;
> (c) have authorization from a physician or health care professional to participate in the program; and
> (d) *be capable of making choices about activities of daily living, understand the impact of these choices and assume the responsibility of the choices*.

Admin. R. M. 37.40.1305(1) (1995) (emphasis added).

**Consumer Direct**

¶7 Consumer Direct is licensed as an agency service provider by DPHHS. Under the Self-Directed PASP, Consumer Direct provides administrative support to Consumers receiving personal services for a fee, helping Consumers apply their Medicaid benefits to compensate their personal assistants. Consumer Direct's "Consumer Training Manual" informed Cosumers that Consumer Direct would "process payroll, file taxes, bill for services, process criminal background checks and provide you with the training materials for your caregiver(s)."

4

**Maria Atkins-Swanson**

¶8 In 2009, Atkins-Swanson applied and qualified for participation in the Self-Directed PASP under the eligibility criteria. She selected Consumer Direct as her provider agency. Atkins-Swanson located, selected, and hired Taylor Lang (Lang) to be her personal assistant. She trained Lang and supervised Lang's provision of services. After initially being medically qualified to participate in 2009, Atkins-Swanson was medically re-qualified for the Self-Directed PASP annually until her death in 2013, as required by Admin. R. M. 37.40.1305(1)(c) (1995). Consumer Direct, as the provider agency, provided the above-described administrative services to Atkins-Swanson during the course of her participation in the program.

¶9 On June 27, 2013, while Lang was serving as her personal assistant, Atkins-Swanson succumbed to a fatal overdose of buspirone. Thereafter, Swanson filed this action on his own behalf and on behalf of Atkins-Swanson's Estate against Consumer Direct, stating claims of wrongful death, survivorship, and breach of contract. Swanson alleged that Consumer Direct was Lang's employer and liable in *respondeat superior* for Lang's involvement in Atkins-Swanson's death.

¶10 Consumer Direct moved for summary judgment on the basis of § 53-6-145(5), MCA, which provides that "[m]edical and related liability for personal-care services . . . rests with the person directing the services," arguing that Atkins-Swanson was the person directing the personal services at issue. The District Court agreed, reasoning that Atkins-Swanson had qualified to participate in the Self-Directed PASP, that

5

§ 53-6-145(5), MCA, assigned liability for Lang's services to Atkins-Swanson and was dispositive, rendering Consumer Direct "statutorily immune from medical and related liability so long as it is not directing the personal-care services." Swanson filed a M. R. Civ. P. 59(e) motion to alter or amend the judgment, which the District Court denied on the grounds that "Swanson has not presented any new evidence, manifest errors of law or fact, or shown any evidence of counsel's misconduct."

¶11    Swanson appeals.

## STANDARD OF REVIEW

¶12    We review *de novo* a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (internal citations omitted). We review a district court's denial of a M. R. Civ. P. 59(e) motion for abuse of discretion. *In re Marriage of Anderson*, 2013 MT 238, ¶ 13, 371 Mont. 321, 307 P.3d 313 (citing *In re Marriage of Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105).

## DISCUSSION

¶13    *Did the District Court err by denying Swanson's motions on the ground that the claims were foreclosed under § 53-6-145, MCA?*

¶14    Swanson first urges reversal of the District Court upon the theory that Consumer Direct was Lang's "common law employer" and, therefore, bore responsibility for her

6

actions under *respondeat superior*. Swanson's theory is largely premised upon a statement made within the State's 2011 Application for a Section 1915(c)[3] Home and Community Based Service Waiver submitted to obtain authorization for Medicaid funding of Montana's Personal Assistance Programs. On a pre-printed form, an option box is checked under the subject category "Participant-Employer Authority" that includes the language "[a]n agency is the common law employer of participant-selected/recruited staff and performs necessary payroll and human resources functions." The Medicaid waiver application process is governed by Section 1915 of the Social Security Act and § 53-6-402, MCA, which Swanson cites, and which generally authorizes DPHHS to seek and obtain "waivers of federal [M]edicaid law" used to fund personal and community-based services. Section 53-6-402(1), (2), MCA. The form relied upon by Swanson, whatever the meaning or intent of the quoted language may be, was submitted by the State as part of the Medicaid waiver application process. However, the PASPs, particularly the Self-Directed PASP at issue, are authorized by Section 1905 of the Social Security Act[4] and governed by § 53-6-145, MCA, the implementation of which resolves the issues raised here. Implicit within Swanson's additional arguments about the interpretation of § 53-6-145, MCA, is the recognition that the Legislature has acted in this area, and common law principles do not control. "In this state there is no common law in any case where the law is declared by statute." Section 1-1-108, MCA; *see Woods v.*

---

[3] Section 1915 of the Social Security Act is codified at 42 U.S.C. 1396n (2012).

[4] Section 1905 is codified at 42 U.S.C. 1396d (2012).

7

*State*, 2015 MT 8, ¶ 19, 378 Mont. 38, 340 P.3d 1254 ("Although the Woodses urge this Court to apply general common law principles of foreseeability, . . . the Legislature rejected this approach when it adopted § 27-1-1102, MCA.").

¶15 Addressing the District Court's dismissal of his claims under § 53-6-145(5), MCA, Swanson argues that "[a]ny waiver [of liability] that may be derived from § 53-6-145, MCA[,] is ambiguous," and that an "alternative plausible interpretation" is that the provision simply means "the disabled person's assistants are not to be held to a standard of care equivalent to a medical provider." Swanson also argues the statutory language that medical and related liability "rests with" the person directing services does not mean liability could not be shared by others, which would be more consistent with the idea that personal assistants are treated as employees of the licensed provider agencies for some purposes.

¶16 Our purpose is to "implement the objectives the Legislature sought to achieve." *Clark Fork Coal. v. Tubbs*, 2016 MT 229, ¶ 20, 384 Mont. 503, 380 P.3d 771 (citing *Mont. Wildlife Fed'n v. Sager*, 190 Mont. 247, 264, 620 P.2d 1189, 1199 (1980)). "If the intent of the Legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls and the Court need go no further nor apply any other means of interpretation." *Clark Fork Coal.*, ¶ 20 (citing *Phelps v. Hillhaven Corp.*, 231 Mont. 245, 251, 752 P.2d 737, 741 (1988)). "When the legislative intent cannot be readily derived from the plain language, we review the legislative history and abide by the intentions reflected therein." *State v. Allport*, 2015 MT 349, ¶ 13, 382 Mont. 29, 363

8

P.3d 441 (quoting *Montanans For Justice: Vote No On CI-98 v. State*, 2006 MT 277, ¶ 60, 334 Mont. 237, 146 P.3d 759).

¶17 Section 53-6-145(1), MCA, states the Legislature's objectives for the PASPs and authorizes DPHHS and the Department of Labor and Industry to develop rules furthering those objectives, including defining the legal duties of the persons involved:

> Recognizing the importance of *consumer control* over personal assistance services in a *self-directed service model*, the legislature directs the department of public health and human services and the department of labor and industry to adopt administrative rules authorizing a person with a disability *to act as though the person is the employer, for the purposes of selection, management, and supervision, of a personal assistant, although the personal assistant is the employee of another person or entity*. The rules must reflect both the rights and protection guaranteed to workers under existing labor law and *ensure that consumers of personal assistant services have day-to-day control, supervision, and direction over those services.*

(Emphasis added.) This section divides legal responsibilities, normally vested completely in an employer, between the person with a disability, or "Consumer," and "another person or entity," regarding the employment of the personal assistant.

¶18 Pursuant to this statutory section, regulations have been adopted that further define this division of responsibilities. Regarding the Self-Directed PASP, Admin. R. M. 37.40.1305 (1995), provides the requirements that must be assumed by the Consumer:

> (1) To qualify for self-directed personal assistance, the consumer must:
> (a) have a medical condition which results in the need for personal assistance services;
> (b) *be capable of assuming the management responsibilities* of assistants . . . ;
> (c) have authorization from a physician or health care professional to participate in the program; and

9

(d) *be capable of making choices about activities of daily living, understand the impact of these choices and assume the responsibility of the choices.*

(2) The consumer must be *capable of acting as though the personal assistant is their employee for the purposes of selection, management and supervision of the personal assistant, although the personal assistant is the employee of a self-directed personal assistance provider.*

  (a) The *consumer has the primary responsibility in the scheduling, training and supervision of the personal assistant. The consumer has the right to require that a particular assistant discontinue providing services to the consumer.*

(Emphasis added.) Thus, the Consumer, to participate in a Self-Directed PASP, must be capable of making choices regarding her daily activities, understanding these choices, and assuming responsibility for them. *See also* Admin. R. M. 37.40.1102(5) (1995) ("The recipient, in order to receive personal care services, must be capable of making choices about activities of daily living, understand the impact of these choices and assume responsibility for the choices . . . ."). Further, the Consumer is to act as the employer for purposes of the "selection," "scheduling," "training," "management," and "supervision" of the personal assistant, and even has "the right to require that a particular assistant discontinue providing services." Admin. R. M. 37.40.1305(2) (1995).

¶19 Admin. R. M. 37.40.1307 (1995) sets forth the requirements of the Self-Directed PASP provider agencies, as follows:

> (1) Self-directed personal assistance providers have the following responsibilities:
>   (a) assist consumers to identify resources for personal assistants;
>   (b) advise the consumer regarding program participation;
>   (c) determine the amount of services available to the consumer by completing the consumer profile;
>   (d) re-certify consumer needs every 180 days;
>   (e) review the plan of care; and

10

> (f)  *act as the employer of record for personal assistants for purposes of payroll and federal hiring practices.*

(Emphasis added.)

¶20    Swanson does not argue that these regulations are inconsistent with § 53-6-145, MCA.  They provide further definition about the parties' individual legal responsibilities with regard to personal assistants.  The Consumer has full authority over the personal assistant's provision of services, while the provider agency is the personal assistant's employer for the narrow purpose of providing administrative support.  This designation of responsibilities lays the foundation for application of § 53-6-145(5), MCA: "Medical and related liability for personal-care services . . . rests with the person directing the services."

¶21    Swanson's arguments notwithstanding, the record and the governing authority allow us but one conclusion—that "the person directing the services" in the Self-Directed PASP at issue here was Atkins-Swanson.  In contrast to the Agency-Based PASP model, the licensed provider agency in a Self-Directed PASP exercises no authority over the day-to-day provision of services by the personal assistant.  To the contrary, the Consumer must be capable of exercising complete management responsibilities for the assistant, and is granted the authority to do so.

¶22    To the extent any ambiguity would remain, the legislative history confirms this purpose of the statute.  A report submitted to the Senate Committee on Public Health, Welfare & Safety during a hearing on March 13, 1995, by Representative John Cobb,

11

sponsor of HB 504, which created the authority for PASPs,[5] provided the following question and answer:

> Q:  Who will assume the liability if the PA [personal assistant] performs a task wrong?
> A:  This bill (through amendment) recognizes that the *person directing his\her PAS [personal assistance services] has the liability and responsibility to ensure that their needs are met*.  Once trained, consumers of PAS are responsible for ensuring that their personal assistants work as directed and performed [sic] to their satisfaction.

*Committee Hearing on HB 504 Before the S. Comm. on Pub. Health, Welfare & Safety*, 54th Leg., Reg. Sess. (Mont. 1995) (emphasis added).  HB 504 bill was enacted as Chapter 525, Laws of Montana, and provided, in pertinent part, the following Statement of Intent:

> The rules must allow the person with a disability to act as though the person is the employer, for the purposes of selection, management, and supervision of the personal assistant in making the decisions of who to employ, terms of employment, length of employment, and other matters, although the personal assistant is the employee of another person or entity.  Before a person with a disability would be allowed to act as though that person is the employer, the person must also have a plan of care approved by a physician or health care professional, stating what aspects of the disabled person's care the personal assistant may be assigned.

Thus, the legislative history reflects that the Legislature contemplated the issue of liability, placing it on the Consumer if she elected to exercise the authority of an employer over the management of the personal assistant, was capable of doing so, and was so approved.  This history confirms our reading of § 53-6-145(5), MCA.

---

[5] HB 504 was entitled, "An Act Requiring the Department of Social and Rehabilitation Services and the Department of Labor and Industry to Adopt Rules Governing the Use of a Personal Assistant by a Person With a Disability . . . .".

¶23 Swanson argues that the statute should not also foreclose his claim against Consumer Direct for negligent failure to adequately train and supervise Lang. However, first, there is no support in the record for Swanson's assertions that "Consumer Direct assumed certain affirmative duties to train and supervise" Lang, and that Atkins-Swanson had "no ability" to control or participate in Lang's provision of services. Atkins-Swanson was required to demonstrate the ability to manage Lang in order to participate in a Self-Directed PASP, and no one disputes that she so qualified. The program laid the responsibility to train and supervise Lang directly on Atkins-Swanson, not Consumer Direct. Then, as the District Court reasoned, the plain language of § 53-6-145(5), MCA, "covers both medical *and* related liability. As Swanson rightly acknowledges, the administration of medication was a medically-related aspect of [Atkins-Swanson's] care." (Emphasis in original.)

¶24 Lastly, Swanson argues "public policies support the right to sue Consumer Direct for its role in [Atkins-]Swanson's death." We do not disagree. A program designed to help disabled persons should also ensure that appropriate liability protections are in place to protect them in the event they receive negligent care. However, we have noted in other contexts, "legislative decisions . . . are subject to honest debate." *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 37, 353 Mont. 265, 222 P.3d 566. "Such a debate involves issues and decisions about public policy that are clearly of the sort much better suited to the halls of the legislature." *Satterlee*, ¶ 38.

¶25 The District Court correctly granted Consumer Direct's motion for summary judgment and correctly denied Swanson's M. R. Civ. P. 59(e) motion.[6]

¶26 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA

---

[6] Swanson's briefing includes an allusion to the concept of federal preemption, but does not develop an argument applying the standards and analyses of express or implied preemption. Consequently, we do not address the issue.