FILED

11/08/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0516

DA 16-0516

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 277

FLATHEAD JOINT BOARD OF CONTROL and JERRY
LASKODY, BOONE COLE, TIM ORR, TED HEIN,
BRUCE WHITE, SHANE ORIEN, WAYNE BLEVINS
and GENE POSIVIO, all members of the
Flathead Joint Board of Control,

        Plaintiffs and Appellants,

   v.

STATE OF MONTANA,

        Defendant, Appellee and Cross-Appellant,

   and

CONFEDERATED SALISH AND KOOTENAI TRIBES,

        Intervenor, Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                  In and For the County of Lake, Cause No. DV-15-73
                  Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Bruce A. Fredrickson, Kristin L. Omvig, Rocky Mountain Law
                Partners, P.C., Kalispell, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Dale Schowengerdt, Solicitor
                General, J. Stuart Segrest, Matthew T. Cochenour, Melissa Schlichting,
                Assistant Attorneys General, Helena, Montana

        For Intervenor:

                John B. Carter, Daniel J. Decker, Rhonda R. Swaney, Attorneys at Law,
                Pablo, Montana

Submitted on Briefs: September 6, 2017

Decided: November 8, 2017

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The Flathead Joint Board of Control (the Board) challenges the constitutionality of the Confederated Salish and Kootenai Water Compact (the Compact) entered between the Tribes, the State of Montana and the United States, and codified at § 85-20-1901, MCA. The District Court held that one provision was unconstitutional, but that it was severable from the remainder of the Compact. The Board appeals.

¶2 We restate the issue on appeal as whether Article II, Section 18 of the Montana Constitution required the Legislature to approve the Compact or its administrative provisions by a two-thirds vote of each house because they granted new immunities to the State.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 After many years of negotiation, representatives of the State of Montana, through the Reserved Water Rights Compact Commission, provided for in § 85-2-702, MCA, the Confederated Salish and Kootenai Tribes (CSK), and the United States agreed to the terms of the Compact as a means of settling water rights disputes involving the Tribes. In 2015 the Montana Legislature approved the Compact, and its lengthy provisions are codified at § 85-20-1901, MCA. The Legislature concurrently enacted separate administrative and management provisions, codified at § 85-20-1902, MCA. While the State of Montana has approved the Compact, it will not be effective until after it is also approved by the CSK Tribal Council and by Congress.

3

¶4 The parties agreed in the Compact that the water right claims of the CSK Tribes should be settled through agreement rather than litigation. The Compact seeks to "secure to all residents of the Reservation the quiet enjoyment of the use of waters of the Reservation" and to provide a "unitary administration system" for appropriation of water and administration of water rights. Art. I, § 85-20-1901, MCA.

¶5 The plaintiff Board oversees the operations of the Flathead, Mission and Jocko Valley Irrigation Districts. The Districts are local governmental entities provided for by Montana law, with locally elected officials. They generally have the authority and responsibility to represent landowners in the various districts as to water and irrigation matters.

¶6 The Board challenged a specific section of the Compact and a specific section of the administrative provisions. The first, Article IV.I.8 of § 85-20-1901, MCA, of the Compact provides:

> The Tribes and the State hereby waive their respective immunities from suit, including any defense the State shall have under the Eleventh Amendment of the Constitution of the United States, in order to permit the resolution of disputes under the Compact by the Board, and the appeal or judicial enforcement of Board decisions as provided herein, except that such waivers of sovereign immunity by the Tribes or the State shall not extend to any action for money damages, costs or attorneys' fees. The parties recognize that only Congress can waive the immunity of the United States and that the participation of the United States in the proceedings of the Board shall be governed by Federal law, including 43 U.S.C. § 666.

The second section challenged by the Board is Section 1-2-111 of § 85-20-1902, MCA, of the administrative and management statute:

4

Members of the Board, the Engineer, and Designee, and Water Commissioner appointed pursuant to Section 3-1-114 of this Ordinance, and any Staff shall be immune from suit for damages arising from the lawful discharge of an official duty associated with the carrying out of powers and duties set forth in the Compact or this Ordinance relating to the authorization, administration, or enforcement of water rights on the Reservation.

The Board contends that these provisions create new sovereign immunities from suit for the State of Montana, and that Article II, Section 18 of the Montana Constitution therefore requires that they be enacted by a two-thirds majority of each house of the Legislature. The parties agree that neither the Compact nor the management provisions passed either house by a two-thirds majority vote.

¶7 The parties filed cross motions for summary judgment. The District Court found that the case was justiciable and appropriate for judicial resolution. As to the merits, the District Court found that the challenged section of the Compact did not contravene Article II, Section 18 of the Montana Constitution because it did not enact any new immunities from suit. To the contrary, that section waived immunities from suit and so could become effective without a two-thirds majority vote of each house of the Legislature. As to the challenged section of the administrative provisions, the District Court found that it provided "new immunity to the State and its agents" and therefore was covered by Article II, Section 18 of the Montana Constitution. Since the provision did not pass by a two-thirds majority of each house, the District Court struck it as unconstitutional, but held that it could be severed from the remaining provisions of the enactment.

5

¶8    The Board appeals and the State cross-appeals.

## STANDARD OF REVIEW

¶9    All legislative enactments are presumed to be constitutional, and the challenging party bears the "heavy burden" to prove "beyond a reasonable doubt" that the challenged statute is unconstitutional. *Molnar v. Fox*, 2013 MT 132, ¶ 49, 370 Mont. 238, 301 P.3d 824. Courts should strive whenever possible to avoid interpreting a statute in a way that causes it to be unconstitutional. *Molnar*, ¶ 38.

¶10    This Court reviews a district court's decision on summary judgment to determine whether it is correct, using the same criteria under M. R. Civ. P. 56. *Pilgeram v. GreenPoint Mortgage*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

## DISCUSSION

¶11    *Issue:  Whether Article II, Section 18 of the Montana Constitution required the Legislature to approve the Compact or its administrative provisions by a two-thirds vote of each house because they granted new immunities to the State.*

¶12    As a preliminary matter, the State contends that this case is not justiciable because the Compact has not yet been approved by the CSK Tribes or by Congress and so is not yet in effect. The District Court determined that the legal issues were justiciable, noting that the State has approved the Compact, and has appropriated money to begin implementing it. We agree that because the Montana Legislature has appropriated money for the purpose of implementing the Compact, and its preliminary provisions are being implemented, we are not called upon to issue an advisory opinion here. The issues of Tribal water rights are important both in the Flathead region and statewide, and the issues presented here are purely legal and constitutional. *See Confederated Salish & Kootenai*

6

*Tribes v. Stults*, 2002 MT 280, ¶ 19, 312 Mont. 420, 59 P.3d 1093. Determining the State constitutional challenge now will also resolve any cloud over the deliberations of Congress and the CSK Tribes in considering the Compact. A decision here applies to an existing controversy; the issue can be determined by judicial decision; and the dispute is one of "overriding public moment." *Lee v. State*, 195 Mont. 1, 6, 635 P.2d 1282, 1284-85 (1981). Therefore, we proceed to consider the merits of the legal issues raised by the Board.

¶13 In 1972 the State of Montana waived its sovereign immunity from suit with adoption of Article II, Section 18 of the Constitution. *Silverstone v. Park County*, 2007 MT 261, ¶ 12, 339 Mont. 299, 170 P.3d 950. Despite that waiver, the State remains immune from suit for money damages in federal courts because of the Eleventh Amendment to the United States Constitution. *Brown v. Montana*, 442 F. Supp. 2d 982, 988 (D. Mont. 2006). A state may waive sovereign immunity from suit in its own courts without waiving its Eleventh Amendment immunity. *Montana v. Peretti*, 661 F.2d 756, 757 (9th Cir. 1981).

¶14 The Montana Constitution provides:

> The state, counties, cities, towns and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

Mont. Const. art. II, § 18. This provision restrains the Legislature in asserting sovereign immunity from suit, but it "does not in any way prohibit the legislature from *waiving*

7

sovereign immunity in any case." *Byorth v. District Court*, 175 Mont. 63, 66, 572 P.2d 201, 203 (1977) (emphasis in original).

¶15   The District Court determined that the Compact provision providing for a "waiver of immunity" in Article IV.I.8 of § 85-20-1901, MCA, did not violate the provisions of Article II, Section 18 of the Montana Constitution.  The District Court determined that this provision was a *waiver* of immunity, not a grant of new immunity.  The District Court determined that the two-thirds legislative approval requirement of Article II, Section 18 of the Montana Constitution applies only to the imposition of new immunities from suit and therefore does not apply to new waivers of immunity.  We agree with the District Court's construction of the plain language of the Constitution and the Compact. Article IV.I.8 of § 85-20-1901, MCA, of the Compact on its face did not create any new immunity from suit and so could be enacted by less than a two-thirds majority of each house.

¶16   The disputed immunity provision in the administrative and management statute is Section 1-2-111 of § 85-20-1902, MCA (quoted above).  The administrative statute creates a Water Management Board consisting of two members appointed by the Governor, two appointed by the CSK Tribal Council, and a fifth selected by those appointees.  The Board is responsible for appointing an Engineer and any Water Commissioners.  Sec. 1-2-110, 3-1-114, § 85-20-1902, MCA.  The District Court determined that it clearly "creates a new sovereign immunity for the state, and for its agents or employees."

8

¶17 It is established that "immunities separate and distinct from sovereign immunity remained unaffected by the language of Article II, Section 18." *Silverstone v. Park County*, 2007 MT 261, ¶ 13, 339 Mont. 299, 170 P.3d 950. Individuals who are judges, prosecutors, and members of quasi-judicial bodies, for example, have immunities from suit for actions taken in their designated positions. *Silverstone*, ¶ 13; § 2-9-112, MCA (providing for judicial immunity.) Article II, Section 18 on its face plainly applies only to new sovereign immunities enacted for the benefit of the "state, counties, cities, towns and all other local governmental entities." The immunity provision of the administrative and management ordinance, Section 1-2-111 of § 85-20-1902, MCA, does not establish or alter any immunity as to the "state, counties, cities, towns [or] other local governmental entities." To the contrary, the new immunities provided there specifically apply only to designated individuals—"Members of the Board, the Engineer, and Designee, and Water Commissioners appointed pursuant to Section 3-1-114 of this Ordinance, and any Staff." We decline to consider any extrinsic materials to determine legislative intent here because it is clear on the face of the statute. *Swanson v. Consumer Direct*, 2017 MT 57, ¶ 16, 387 Mont. 37, 391 P.3d 79. State governmental entities listed in Article II, Section 18 of the Montana Constitution are not covered by this immunity provision in the management ordinance.[1]

¶18 Montana law in other contexts recognizes immunities from suit as to individual public employees, apart from immunities for the governmental entities themselves.

---

[1] We need not consider whether the Board itself is a State, Tribal or Federal entity because the only immunity provided is to "members" of the Board.

Section 2-9-305(2), MCA, provides that a State employee is immune from suit if the governmental entity employer acknowledges or is bound by a judicial determination that the employee was acting in the course and scope of employment. Also, for example, see § 2-9-112(2), MCA, granting immunity from suit for damages to a "member, officer, or agent of the judiciary"; § 7-33-2208(2), MCA, granting a chief or deputy of a rural fire district immunity from suit resulting from certain firefighting activities; and § 41-2-203, MCA, immunizing from suit persons who report child abuse, in certain situations.

¶19 The District Court reached an incorrect conclusion of law by construing the disputed provision of the administrative statutes as providing a new immunity from suit for the State of Montana. The provision on its face does not provide any new immunity to the State of Montana or to any other governmental entity. Therefore, Article II, Section 18 of the Montana Constitution does not apply, and the District Court's decision to the contrary is reversed.

**CONCLUSION**

¶20 The disputed provisions of the Confederated Salish and Kootenai Water Compact are consistent with Article II, Section 18 of the Montana Constitution. The District Court is affirmed in part and reversed in part.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

Justice Laurie McKinnon, concurring.

¶21     I agree with the Court's resolution of the disputed provisions of the Compact.  I write separately only to address the State's contention raised in its cross-appeal that the Board does not have standing because the Board's claims are hypothetical and seek an advisory opinion by this Court.

¶22     The judicial power of the courts is limited to justiciable controversies.  *Reichert v. State*, 2012 MT 111, ¶ 53, 365 Mont. 92, 278 P.3d 455.  This limitation is premised upon both constitutional requirements and policy or prudential considerations.  *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567.  The constitutional component derives from Article VII, Section 4, of the Montana Constitution which confers original jurisdiction on district courts in "all civil matters and cases at law and in equity."  Mont. Const. art. VII, § 4(1).  This language has been interpreted as embodying the same limitations as those imposed on federal courts by the "case or controversy" provision of Article III, Section 2, of the United States Constitution.  *Olson v. Dep't of Revenue*, 223 Mont. 464, 469-70, 726 P.2d 1162, 1166 (1986).  Thus, federal precedent interpreting Article III requirements for justiciability are persuasive authority for interpreting justiciability requirements of Article VII, Section 4(1), of the Montana Constitution.  *Plan Helena*, ¶ 6.

¶23    In federal jurisprudence, "the irreducible constitutional minimum of standing has three elements: injury in fact (a concrete harm that is actual or imminent, not conjectural or hypothetical), causation (a fairly traceable connection between the injury and the conduct complained of), and redressability (a likelihood that the requested relief will

11

redress the alleged injury).” *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 32, 360 Mont. 207, 255 P.3d 80 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 1016-17 (1998)). Regarding the first element, injury in fact, we have explained that a plaintiff must have suffered “a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action.” *Schoof v. Nesbit*, 2014 MT 6, ¶ 15, 373 Mont. 226, 316 P.3d 831; *accord Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶¶ 26-27, 366 Mont. 450, 288 P.3d 193. As to the requirement of present or threatened injury, “[o]ther courts have held and we agree, that potential economic injury is sufficient to establish standing.” *Mont. Human Rights Div. v. City of Billings*, 199 Mont. 434, 443, 649 P.2d 1283, 1288 (1982). In *Rosebud County v. Department of Revenue*, 257 Mont. 306, 849 P.2d 177 (1993), a county's substantial interest in the protection of its tax base and its potential for economic harm in the valuation of heavy equipment was sufficient to give the county standing to challenge administrative rules. Also, in *Missoula City-County Air Pollution Control Board v. Board of Environmental Review*, 282 Mont. 255, 937 P.2d 463 (1997), this Court held that a local air pollution control board established a threatened injury when it faced potential economic harm from the additional expenses necessary to monitor, collect, and analyze data and to develop a regulatory response pursuant to an administrative rule regulating air pollution that applied within its jurisdiction.

¶24 This case is unique in that the dispute arises out of a provision in an agreement negotiated among the United States, the Confederated Salish and Kootenai Tribes

12

(CSK), and the State of Montana. The Compact represents a negotiated compromise among the parties, in lieu of adjudicating the water claims of the CSK and its members in protracted, expensive, and uncertain litigation. *See In re Crow Water Compact*, 2015 MT 217, ¶ 6, 380 Mont. 168, 354 P.3d 1217. The Flathead Joint Board of Control is the joint board of operations for the Flathead Irrigation District, Mission Irrigation District, and Jocko Valley Irrigation District, which are elected local government bodies under Montana law. The Board is responsible for representing irrigators within its districts and overseeing irrigation operations. Other Appellants are Board members, property owners, and individual irrigators. Appellants allege that the Compact operates to immunize the State from any responsibility for money damages. Specifically, Appellants allege that the Compact creates a new administrative hierarchy with defined and unitary enforcement authority to administer and manage water of the several irrigation districts. Appellants maintain that the Compact's immunity provisions will prohibit administrative bodies from awarding money damages and that the Compact operates to eliminate a party's right to obtain money damages in any forum. Appellants allege an injury in fact on the basis of a threatened economic harm—the inability to be compensated for injuries as a result of an unconstitutional immunization provision— which they argue is imminent because the Montana Legislature approved the Compact and it became law. Appellants argue that, although the Compact has not been ratified by Congress, planning, design, and implementation of adaptive management programs has already begun to occur prior to the Compact's effective date.

13

¶25 I would conclude that Appellants have alleged a threatened economic injury and that the threatened injury is imminent. Appellants' rights under the Compact have been conclusively established by the Montana Legislature, absent review by this Court. While the Compact requires approval by other parties to become effective, as it relates to the Board, irrigators, and property owners, the Compact has been adopted in Montana and is currently being implemented by the Compact Implementation Technical Team (CITT). The Compact is no longer imminent in Montana, but has become Montana law, § 85-20-1901, MCA. The delay in ratification by the remaining parties does not disfranchise Appellants of standing when they seek a determination of their rights under a Montana law they assert is unconstitutional. Appellants' injuries and challenges are distinguishable from those of the taxpayers we concluded did not have standing in *Mitchell v. Glacier County*, No. DA 16-0716, 2017 MT 258, ___ Mont. ___, ___ P.3d ___, 2017 Mont. LEXIS 649 (Oct. 25, 2017). In *Mitchell*, taxpayers alleged errors in the county's budgeting and accounting of revenues and a failure of the county to comply with the Single Audit Act. We held that although there were deficit balances in particular funds, the county's total government funds were more than adequate to meet the county's needs and taxpayers could not show that an increase in taxes was actual or imminent. *Mitchell*, ¶ 37. As taxpayers were unable to demonstrate an injury in fact and had not raised a constitutional challenge to the Single Audit Act, we found they lacked standing. *Mitchell*, ¶ 43.

¶26 Here, Appellants challenge the constitutionality of a recently enacted statute that would eliminate their rights to obtain money damages in any forum. Appellants are

14

either water users of the district or are responsible for representing water users and overseeing irrigation operations. The Compact has become Montana law and is being implemented by the CITT. The Appellants, in my view, have demonstrated a threatened injury in fact and satisfied the first requirement for constitutional standing. The remaining elements for constitutional standing—causation and redressability—are also established. If Appellants were to successfully challenge the immunity provisions, those provisions would be declared unconstitutional.

¶27 The constitutional requirements of standing have been described as "absolute," while the prudential limitations have been described as "malleable." *Schoof*, ¶ 15. Having found that Appellants meet the constitutional minimum requirements for standing, there remains the prudential limitation of standing to consider. These are discretionary limits on the exercise of judicial power that "cannot be defined by hard and fast rules." *Air Pollution Control Bd.*, 282 Mont. at 260, 937 P.2d at 466. For example, a litigant may only assert her own constitutional rights or immunities, *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 48, 337 Mont. 1, 155 P.3d 1247, and the alleged injury should be distinguishable from the injury to the public generally, though not exclusive to the plaintiff, *Bd. of Trs. v. Cut Bank Pioneer Press*, 2007 MT 115, ¶ 15, 337 Mont. 229, 160 P.3d 482, *superseded by statute*, 20 U.S.C. § 1232g(a)(4)(A), *as recognized in Krakauer v. State*, 2016 MT 230, ¶ 22, 384 Mont. 527, 381 P.3d 524. Prudential limitations of standing generally involve a weighing of the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Reichert*, ¶ 56. The principal consideration under the fitness inquiry is whether there is a factually adequate

record upon which to base effective review. *Reichert*, ¶ 56; *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 20, 333 Mont. 331, 142 P.3d 864. Finally, there is the countervailing factor weighing against these prudential restrictions of whether the question is important to the public. *Air Pollution Control Bd.*, 282 Mont. at 260, 937 P.2d at 466.

¶28 None of the prudential limitations to standing exist in these proceedings. The Appellants have existing water rights and management responsibilities which are clearly affected by the Compact, rights that are distinguishable from the public generally. Moreover, the inquiry here requires the Court to examine the terms of the Compact in relation to the requirements of Article II, Section 18, of the Montana Constitution. It is a question which is nearly entirely one of law and not dependent upon additional facts to aid the Court's inquiry. *See Havre Daily News*, ¶ 20. The record is factually adequate to enable this Court to make the necessary legal determinations.

¶29 Weighing heavily in favor of finding standing is the significance to the litigants of having the constitutionality of the Compact's immunity provisions conclusively determined. This is the "countervailing factor weighing against . . . prudential restrictions," *Heffernan*, ¶ 33, and I fully agree with the Court in its recognition that "[d]etermining the State constitutional challenge now will also resolve any cloud over the deliberations of Congress and the CSK Tribes in considering the Compact." Opinion, ¶ 12. In my view, deferring a determination of the challenged provisions until ratification of the Compact by Congress, the CSK, and the Montana Water Court would consume valuable resources with no corresponding benefit were we to conclude after the parties'

16

ratification that the immunity provisions of the Compact were unconstitutional. Clearly, the circumstances here, which require ratification of a negotiated agreement by federal, state, and tribal governments, and approval of the Montana Water Court, are unique. The complexities of ratification by the various government entities necessitate a delay in the effective date of the Compact, although Appellants' rights have been conclusively determined by the Montana Legislature. Under these unique circumstances, I would find Appellants have alleged an imminent, threatened injury under Montana law and constitutional requirements for standing have been met; further, prudential considerations of standing favor this Court substantively addressing the merits of this appeal.

¶30    I otherwise concur in the Court's decision.

                                        /S/ LAURIE McKINNON

Justice Beth Baker joins in the concurring Opinion of Justice Laurie McKinnon.

                                        /S/ BETH BAKER

Justice Jim Rice, concurring in part and dissenting in part.

¶31    I concur with the Court's determination that this matter is justiciable.

¶32    Regarding Article IV.I.8 of the Compact, the District Court held that the provision was a waiver of immunity, and not a grant of immunity subject to a "2/3 vote of each house of the legislature." Mont. Const. Art. II, sec. 18. The Court states its agreement here "with the District Court's construction of the plain language of the Constitution and the Compact," Opinion, ¶ 15, and I likewise concur. As the District Court explained, this

17

provision constitutes "a limited waiver of [the state's] sovereign immunity, under the Eleventh Amendment of the U.S. Constitution, which prohibits the state [from] being sued in a federal court." The District Court stated that the waiver of immunity would permit "certain kinds of suits," which would include, under the language of the Compact, actions for "the resolution of disputes under the Compact by the Board, and the appeal or judicial enforcement of Board decisions as provided herein." The provision clarifies that this waiver "shall not extend to any action for money damages, costs or attorneys' fees." Thus, the effect of the provision is to *permit* actions against the state in federal court (a waiver of Eleventh Amendment immunity), not to *prohibit* actions against the state (a grant of immunity).[1]

¶33 Unlike the Court, I also agree with the District Court's analysis of the Administrative Statute, § 85-20-1902, subsection 1-2-111, MCA. That provision, entitled "Immunity from Suit," provides that "Members of the Board, the Engineer, any Designee, any Water Commissioner . . . and any Staff shall be immune from suit for damages" arising out of the discharge of their respective duties. While I acknowledge that members of state boards enjoy common law quasi-judicial immunity for actions taken pursuant to their adjudicatory duties, *see Rahrer v. Board of Psychologists*, 2000 MT 9, ¶¶ 12-20, 298 Mont. 28, 993 P.2d 680, the Administrative Statute goes beyond the boundaries of our common law quasi-judicial immunity and grants immunity to agents

---

[1] The District Court also suggested that "an obvious problem" with this federal court remedy "is that federal courts do not appear to even have subject matter jurisdiction to entertain such cases under current laws . . . . The limited 'remedy' outlined in the Compact thus appears to be illusory. It may never exist as postulated." This possibly implicated issue of due process of law and related constitutional concerns about the water right process are not before us in this case.

and employees of the state, as well as immunity to board members that is more broadly stated than our common law quasi-judicial immunity. *See Rahrer*, ¶¶ 16-17. The Court distinguishes this grant of immunity from the immunities enacted for the benefit of "state, counties, cities, towns and all other local government entities" under Article II, Section 18, but I do not believe this to be a persuasive distinction. Governments act through their agents. "Every government entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function. . . ." Section 2-9-102, MCA. As noted by the District Court, this conclusion appears to be bolstered by the legislative history of the Compact's passage. Thus, this provision required passage by a 2/3 vote of each house of the legislature and, lacking such, is invalid.

¶34 Section 1-1-113(1) of the Administrative Statute provides that its provisions "are severable, and a finding of invalidity of one or more provisions hereof shall not affect the validity of the remaining provisions." Pursuant thereto, I would affirm the District Court's invalidation and severance of the provision, and dissent from that portion of the Court's opinion.

/S/ JIM RICE

19